[15 NE3d 338, 991 NYS2d 583]

In the Matter of Town of Islip, Appellant, v New York State Public Employment Relations Board et al., Respondents.

Argued April 29, 2014; decided June 5, 2014

**POINTS OF COUNSEL**

*Bond Schoeneck & King PLLC*, Garden City (*Ernest R. Stolzer, Hilary L. Moreiera* and *Christopher T. Kurtz* of counsel), for

appellant. I. The New York State Public Employment Relations Board does not possess the authority to compel the Town of Islip to continue an illegal past practice. (*Matter of Doyle v City of Troy*, 51 AD2d 845; *Jackson Purchase Rural Elec. Co-op. Assn. v Local Union 816, Intl. Broth. of Elec. Workers*, 646 F2d 264; *United States Dept. of Justice v Federal Labor Relations Auth.*, 727 F2d 481; *Barker v Kallash*, 63 NY2d 19; *Balbuena v IDR Realty LLC*, 6 NY3d 338; *Matter of Rosenthal v Harwood*, 35 NY2d 469; *Village Taxi Corp. v Beltre*, 91 AD3d 92; *Noghrey v Town of Brookhaven*, 214 AD2d 659.) II. Section 14-12 of the Town of Islip's Code of Ethics is consistent with the Taylor Law. (*Matter of Doyle v City of Troy*, 51 AD2d 845; *Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.*, 6 NY3d 563; *Matter of Town of Wallkill v Civil Serv. Empls. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836]*, 19 NY3d 1066.) III. There should be no reasonable expectation that an illegal past practice will continue. (*Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd.*, 61 AD3d 1231.) IV. The Town of Islip cannot be estopped from discharging its statutory duties and enforcing the Town Code. (*Matter of Parkview Assoc. v City of New York*, 71 NY2d 274; *Town of Putnam Val. v Sacramone*, 16 AD3d 669; *Town of Southold v Estate of Edson*, 78 AD3d 816.) V. The New York State Public Employment Relations Board's order is unreasonable and should not be enforced. (*Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd.*, 61 AD3d 1231; *Matter of Village of Scotia v New York State Pub. Empl. Relations Bd.*, 241 AD2d 29; *Matter of City of Rome v State of N.Y. Pub. Empl. Relations Bd.*, 283 AD2d 817; *Matter of Germantown Cent. School Dist. v Public Empl. Relations Bd. of State of N.Y.*, 205 AD2d 961; *Matter of Decker v Gooley*, 212 AD2d 893.)

*David P. Quinn*, Albany, for New York State Public Employment Relations Board, respondent. I. The Town of Islip's 1968 Code of Ethics and Financial Disclosure Law does not affect its collective bargaining obligations with teamsters concerning the termination of the Town's long-standing practice of permitting certain teamsters represented employees to use town owned vehicles to commute to and from work. (*Matter of Doyle v City of Troy*, 51 AD2d 845; *City of Amsterdam v Helsby*, 37 NY2d 19; *Mayor of City of N.Y. v Council of City of N.Y.*, 9 NY3d 23; *Matter of Saratoga Springs City School Dist. [New York State Pub. Empl. Relations Bd.]*, 68 AD2d 202, 47 NY2d 711; *Matter of*

*Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660; *Matter of City of Utica [Zumpano]*, 91 NY2d 964; *Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d 395; *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372; *Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.*, 6 NY3d 563; *Matter of Town of Wallkill v Civil Serv. Empls. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836]*, 19 NY3d 1066.) II. The New York State Public Employment Relations Board's remedial order was a lawful exercise of its remedial powers under Civil Service Law § 205 (5) (d) and properly enforced under Civil Service Law § 213 (a) (ii). (*Matter of New York State Pub. Empl. Relations Bd. v Board of Educ. of City of Buffalo*, 39 NY2d 86; *Matter of Monroe County v New York State Pub. Empl. Relations Bd.*, 85 AD3d 1439, 21 NY3d 855; *Matter of Monroe County v New York State Pub. Empl. Relations Bd.*, 85 AD3d 1439; *Matter of New York State Pub. Empl. Relations Bd. v County of Westchester*, 280 AD2d 849; *Matter of City of Albany v Helsby*, 29 NY2d 433; *Matter of City of Albany v Helsby*, 56 AD2d 976; *Matter of City of Poughkeepsie v Newman*, 95 AD2d 101, 60 NY2d 859, 62 NY2d 602.)

*Koehler & Isaacs LLP*, New York City (*Liam L. Castro* of counsel), for United Public Service Employees Union and another, respondents. The New York State Public Employment Relations Board had the authority to compel the Town of Islip to reinstate the past practice of permitting represented employees to use town vehicles to commute to and from work. (*Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774; *Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd.*, 95 NY2d 73; *Matter of West Irondequoit Teachers Assn. v Helsby*, 35 NY2d 46; *Matter of Town of Mamaroneck PBA v New York State Pub. Empl. Relations Bd.*, 66 NY2d 722; *Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398; *City of Amsterdam v Helsby*, 79 Misc 2d 676, 37 NY2d 19; *Matter of Doyle v City of Troy*, 51 AD2d 845; *City of Buffalo v New York State Pub. Empl. Relations Bd.*, 80 Misc 2d 741; *Matter of County of Nassau v New York State Pub. Empl. Relations Bd.*, 215 AD2d 381.)

### OPINION OF THE COURT

READ, J.

Petitioner Town of Islip (the Town) commenced this CPLR article 78 proceeding to challenge the determination made by

respondent New York State Public Employment Relations Board (PERB or the Board) that the Town violated Civil Service Law § 209-a (1) (d) when it unilaterally discontinued the practice of permanently assigning town-owned vehicles to certain employees. The employees were allowed to use these so-called "take home" vehicles to travel from home to work and back—i.e., to commute to work. Section 209-a (1) (d) makes it an improper practice for a public employer to refuse to negotiate in good faith with the bargaining agent for its public employees. Many of the employees who lost "take home" vehicles belonged to blue- or white-collar collective bargaining units represented by Local 237-International Brotherhood of Teamsters (Local 237).[1] We conclude that PERB reasonably applied precedent when making its determination, which is supported by substantial evidence; however, PERB's remedial order is unreasonable insofar as it requires the Town to restore vehicle assignments to the affected employees.

I

On December 13, 1968, the Town enacted Local Law No. 4, which established a code of ethics and financial disclosure rules within the Town Code. Section 14-12, entitled "Use of town-owned equipment or property" states that

> "[n]o officer or employee shall request or permit the use of Town-owned vehicles, equipment, material or property for personal convenience or profit, except when such services are available to the public generally or are provided as municipal policy for the use of such officer or employee in the conduct of official business."

Effective September 15, 1990, the Town revised its Administrative Procedure Manual on the subject of "Town Vehicle Usage and Reporting of Accidents" to "specify guidelines for the usage of [Town] vehicles and to provide instructions for the proper reporting of accidents" (hereafter, the 1990 guidelines). Section 2 of the 1990 guidelines, captioned "Assignment of Vehicles" states in its entirety as follows:

---

**1.** Local 237 was decertified as the labor representative for the blue-collar and white-collar units in September 2010 and September 2013, respectively. The United Public Service Employees Union replaced Local 237 as the certified labor representative for both units. As used in this opinion, then, "Local 237" refers specifically to Local 237-International Brotherhood of Teamsters, while "union" may refer to either Local 237 or the United Public Service Employees Union, depending on chronology.

"a. Permanent Assignment. Certain Town employees by nature of their positions are required to be on call twenty-four hours a day, and those employees will be assigned the use of a Town car. Only those employees who have written authorization from the Supervisor will be granted this privilege.

"b. Temporary Assignment. Other Town vehicles may be made available to Department personnel for official use if requested by the Department Head and approved by the Supervisor."

Section 3 (a) specifies that "[p]ersonal or other unauthorized use of a Town vehicle is strictly forbidden, and any violation of this regulation will result in disciplinary action against the violator."

Based on a combination of job title and seniority, though, certain employees who used town-owned vehicles to carry out their official duties were permanently assigned these cars, which they were permitted to drive to and from work, even though their jobs did not require them to be on call when off-duty. Additionally, successive Town Supervisors seem to have neglected to give written approval for any of these assignments, which were made by department heads.

All employees with "take home" vehicles were directed to keep a mileage log and not to use these cars for personal errands; they were issued a card and key for access to the Town's gasoline pumps, and the Town's fleet management division carried out repairs and maintenance. The Town's payroll office deducted $3 a day from their paychecks to reflect the estimated value, for tax purposes, of the provision of employer-owned cars for travel to and from work.

In September 2007, Local 237 and the Town began negotiations over the terms of successor contracts to the 2005-2007 collective bargaining agreements for the blue- and white-collar units. In October 2007, the Town proposed the topic of "take home" vehicle use as a subject of bargaining in both units.[2] The Town withdrew these proposals in December 2007, the month the existing agreements expired. In February 2008, an impasse was declared and a mediator was appointed.

---

**2.** The 2005-2007 blue-collar agreement did not mention town vehicles, while the 2005-2007 white-collar agreement stated only that the Town "agree[d] to assume responsibility for all Town vehicle violations other than moving or parking."

Meanwhile, the Town Board of Supervisors (the Town Board) on April 29, 2008 adopted a resolution endorsing a fleet/vehicle policy to be put in place in three phases. The resolution's "Whereas" clauses recited that the Town Board was taking this action in order to lower fuel and maintenance costs, reduce the number of "take home" vehicles and encourage the use of pooled vehicles;[3] and that "in implementing such a policy[,] the Town Board re-affirms the principle set out in § 14-12 of the Town Code, and set forth in the Town Administrative Procedure Manual [i.e., the 1990 guidelines] that 'Personal or other unauthorized use of a Town vehicle is strictly prohibited.'"

Under the new policy, which was attached to the resolution, only three categories of employees were to be assigned "take home" vehicles: specified elected officials, 24/7 responders,[4] and employees with multi-work site jobs.[5] All other employees were instructed to use the pool vehicles available at the locations where they reported to work.

By letter dated June 6, 2008, three days before the 2008 fleet/vehicle policy went into effect, the Town's Director of Labor Relations and Personnel informed Local 237's top executive that on account of a "revision" of existing policy, approximately 45 of the union's members would be "shifted from taking a Town vehicle home to utilization of a pool vehicle located at their reporting location[s]." The shift came about because these employees were not elected officials, 24/7 responders or workers who reported to multiple work sites, as required to qualify for a "take home" car under the new policy.

---

**3.** As of April 2008, the Town owned 648 vehicles and employed 944 workers; 155 of the 648 vehicles, or just under one-quarter, were "take home" vehicles.

**4.** 24/7 responders were defined as employees who held
"jobs which require[d them] to be available twenty-four hours per day, seven days per week to respond to an emergency/crisis throughout the Town of Islip at any number of locations. As part of our responsibility to the citizens of Islip, the Town requires certain jobs/individuals to respond directly to the site of an incident bypassing their normal work-site."

**5.** With respect to multi-work site jobs, the policy stated that
"[w]hen a job requires the employee to report to various work sites at the beginning of each day and where reporting to a central work-site/dispatch area to be assigned a Town vehicle would be unproductive and time[-]consuming, then those job functions/individuals may be assigned a vehicle on a permanent basis and permitted to take a Town vehicle home."

By letter dated June 9, 2008, the union's attorney responded that "employee use of Town-owned vehicles for personal purposes (driving to and from work) is an economic benefit and therefore, a mandatory subject of bargaining." On behalf of Local 237, he demanded that the Town retract any orders that unit members turn in the keys to assigned vehicles, pending negotiations over the Town's decision and its impact.

On June 23, 2008, Local 237 filed an improper practice charge with PERB. The charge, as later amended, claimed that the Town violated Civil Service Law § 209-a (1) (a) and (d) by unilaterally adopting the 2008 fleet/vehicle policy and thereby eliminating the ability of certain union employees to continue to use town-owned vehicles to commute to work. The union also alleged that the Town had adopted the new policy in order to undermine the stalled contract negotiations, thus engaging in bad-faith bargaining.

After an evidentiary hearing on July 1, 2009, the administrative law judge (ALJ) issued a decision dated March 1, 2010, in which she found that the union had carried its burden of demonstrating a clear and unequivocal 20-plus-year practice with respect to determining which employees/job titles were eligible for "take home" vehicles, thus creating a reasonable expectation among union members that the same practice would continue (43 PERB ¶ 4514 [2010]). She ruled that the 2008 fleet/vehicle policy was not "a mere modification or clarification of [this] existing vehicle policy," as the Town asserted, but rather manifested a change in practice; and that the Town did not retain any management right to alter its position on the use of "take home" vehicles unilaterally, based on the provisions of section 14-12 of the Town Code and the 1990 guidelines, as the Town argued.

Additionally, the ALJ concluded that Local 237 had failed to prove that the Town refused to bargain the impact of the change; or engaged in bad-faith bargaining by withdrawing the October 2007 "take home" vehicle use proposals and essentially implementing them the following June; or violated Civil Service Law § 209-a (1) (a).[6] With respect to the charge of bad-faith bargaining, the ALJ credited the testimony of the Town's Director of Labor Relations and Personnel, supported by his

---

6. Civil Service Law § 209-a (1) (a) makes it an improper practice for an employer deliberately to "interfere with, restrain or coerce public employees in the exercise of their rights [to join, form and participate in a union] for the purpose of depriving them of such rights."

contemporaneous notes, that he withdrew the "take home" vehicle use proposals in an honest, if mistaken, belief that the proposed change in policy was a management right in light of section 14-12 of the Town Code and the 1990 guidelines.

Accordingly, the ALJ held that the Town had violated Civil Service Law § 209-a (1) (d) by canceling "take home" vehicle assignments without negotiation, and dismissed the union's other claims. She ordered the Town to "restore the vehicle assignments for commutation between home and work to those unit members who enjoyed the benefit prior to April 4, 2008";[7] to "make whole unit employees for the extra expenses incurred as a result of the unilateral withdrawal of the 24/7 vehicle assignment(s), if any, together with interest at the maximum legal rate"; and to sign and post a notice in the workplace to inform employees of the remedies ordered.

In a decision and order dated May 27, 2011, PERB denied the Town's exceptions and Local 237's cross-exceptions to the ALJ's decision and order, which PERB affirmed, essentially on the basis of the ALJ's reasoning (44 PERB ¶ 3014 [2011]). By petition filed in Supreme Court on June 29, 2011, the Town then commenced this CPLR article 78 proceeding to annul PERB's decision and order insofar as the Town was found to have violated Civil Service Law § 209-a (1) (d) by issuing the 2008 fleet/vehicle policy, and to dismiss the improper practice charge. PERB cross-petitioned to enforce its order.

Upon transfer from Supreme Court pursuant to CPLR 7804 (g), the Appellate Division confirmed PERB's determination, denied the petition, dismissed the proceeding, granted PERB's cross petition and remitted the matter to Supreme Court for issuance of an order compelling compliance with its decision and judgment (104 AD3d 778 [2d Dept 2013]). The court held that substantial evidence supported PERB's determination that the permanent assignment of town-owned vehicles to the affected employees constituted a past practice as to a term or condition of employment, a mandatory subject of negotiation, which the Public Employees' Fair Employment Act (Civil Service Law art 14), known as the Taylor Law, barred the Town from unilaterally discontinuing.

The Appellate Division rejected the Town's argument that because "its Ethics Code [specifically, section 14-12 of the Town

---

7. The reason for the choice of this date is not clear from the record. In any event, the 2008 fleet/vehicle policy did not take effect until June 9, 2008.

Code] [forbade] the use of Town vehicles in violation of Town policy, the Town could not be forced to engage in collective bargaining over the issue," explaining that

> "[t]he Town government was responsible for administering the Ethics Code [i.e., section 14-12 of the Town Code] and for managing its vehicle fleet. Yet, as substantial evidence in the record establishes, the Town frequently and openly ignored that Code and its policy for managing its vehicle fleet, only to contend later that the Code allowed it to act unilaterally in taking the vehicles away from the employees who had been permanently provided with them. The PERB was not required to give more effect to the Town Ethics Code than the Town itself gave to it. Second, for similar reasons, it cannot be said as a matter of law that it is unreasonable for employees to rely on the administering authority's interpretation and implementation of its policy and Ethics Code. Consequently, the PERB's determination was not affected by an error of law, arbitrary and capricious, or an abuse of discretion" (104 AD3d at 781-782).

The Town subsequently moved for leave to appeal, which we granted on June 27, 2013 (21 NY3d 861 [2013]).

## II

The Taylor Law requires all public employers and employee organizations to negotiate in good faith to determine represented employees' terms and conditions of employment (Civil Service Law §§ 201 [4]; 203, 204). PERB has long held that employee use of an employer-owned vehicle for transportation to and from work is an economic benefit and a mandatorily negotiable term and condition of employment; therefore, a public employer may not unilaterally discontinue a past practice of providing its employees with this benefit (*see e.g. Matter of County of Nassau*, 13 PERB ¶ 3095 [1980], *determination confirmed sub nom. Matter of County of Nassau v Public Empl. Relations Bd. of State of N.Y.*, 14 PERB ¶ 7017 [Sup Ct, Nassau County 1981] [upholding PERB's determination that Nassau County committed an improper practice by ceasing to provide county-owned vehicles on a 24-hour basis to certain employees in its Department of Public Works], *affd* 87 AD2d 1006 [2d Dept 1982], *lv denied* 57 NY2d 601 [1982]; *Matter of County of Onondaga*,

12 PERB ¶ 3035 [1979], *determination confirmed sub nom. Matter of County of Onondaga v New York State Pub. Empl. Relations Bd.*, 77 AD2d 783, 783-784 [4th Dept 1980] [in a case where Onondaga County stopped allowing 24-hour use of county-owned cars by employees in the Division of Sanitation of the Department of Health, the court noted that "PERB's determination that employee use of an employer-owned car for personal purposes is an economic benefit and a term and condition of employment which cannot be unilaterally withdrawn is reasonable and supported by substantial evidence"]). To be binding, a past practice must be

> " 'unequivocal and . . . continued uninterrupted for a period of time sufficient under the circumstances to create a reasonable expectation among the affected [bargaining] unit employees that the [practice] would continue.' Further, 'the expectation of the continuation of the practice is something that may be presumed from its duration with consideration of the specific circumstances under which the practice has existed' " (*Matter of Chenango Forks Cent. Sch. Dist. v New York State Pub. Empl. Relations Bd.*, 21 NY3d 255, 263 [2013], quoting *Matter of County of Nassau*, 24 PERB ¶ 3029, 3058 [1991]).

Our scope of review in this case is limited to whether PERB's determination that the Town engaged in an improper practice was "affected by an error of law" or was "arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]). "PERB is accorded deference in matters falling within its area of expertise" such as "cases involving the issue of mandatory or prohibited bargaining subjects" (*Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660, 666 [1990] [citation omitted]). Additionally, an administrative determination made after a hearing required by law, such as PERB's determination here, must be supported by substantial evidence (*see Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227, 239 [1997]).

The Town urges that PERB's determination of improper practice was arbitrary and capricious, an abuse of discretion and not supported by substantial evidence for two related reasons: first, that an illegal practice cannot ripen into a binding past practice because employees may not reasonably expect illegal activity to continue indefinitely; and second, that it adopted the 2008 fleet/vehicle policy to conform its practice for

permanently assigning "take home" vehicles with section 14-12 of the Town Code, and an employer has no duty to negotiate with a union before discontinuing a past practice that is illegal under local law.[8] The Town, then, cannot succeed on this appeal unless its past practice contravened section 14-12 because commuting to work constitutes the "use of Town-owned vehicles . . . for personal convenience or profit," which that provision forbids.[9]

Section 14-12 does not define "personal convenience or profit." The record shows, however, that the Town has never interpreted this phrase to encompass commuting to work by employees eligible for "take home" vehicles on account of their work duties and seniority. This is reasonable. After all, there is nothing inherently improper or unethical, much less illegal, about employer-sponsored commutation benefits. Moreover, the Town's interpretation did not change in 2008. The 2008 fleet/vehicle policy simply reduced the categories and therefore the number of town employees who qualified to be permanently assigned "take home" vehicles. Indeed, if the Town and the dissent are correct that any use of an assigned town-owned car to travel back and forth to work amounts to an illegal "use of Town-owned vehicles . . . for personal convenience or profit," then the 2008 fleet/vehicle policy perpetuated rather than cured the illegality.

In sum, the Town asks us to rule in its favor on the ground that a public employer does not violate section 209-a (1) (d) of the Taylor Law when it unilaterally discontinues a past practice with respect to a term and condition of employment that is illegal under local law. Whatever the merits of the Town's position, we do not reach and need not consider them because the rele-

---

8. The Town now also contends, alternatively, that Civil Service Law § 209-a (4) (i), which states that "[n]othing in this section shall be deemed to eliminate or diminish any right that may exist pursuant to any other law," exempts the Town's enforcement of section 14-12 from mandatory negotiations under the Taylor Law. We do not consider this argument, which was not presented to the ALJ and is therefore not preserved for our review.

9. The Town no longer seems to rely on the 1990 guidelines except to the extent that, consistent with section 14-12, they state that "Personal or other unauthorized use of a Town vehicle is strictly prohibited." In any event, guidelines, by definition, are not binding. As a result, it was not illegal for town officials to disregard the 1990 guidelines by assigning "take home" vehicles to non-24/7 responders. And, of course, the 2008 fleet/vehicle policy does not itself comply with the 1990 guidelines as it extends eligibility for "take home" vehicles to nonemergency personnel (i.e., employees who work at multiple sites during the workday).

vant past practice was not, in fact, illegal under the local law. Accordingly, PERB reasonably applied its precedent to determine that the Town engaged in an improper practice when it unilaterally discontinued the permanent assignment of "take home" vehicles to employees who enjoyed this benefit before the Town adopted and implemented the 2008 fleet/vehicle policy, and PERB's determination was based on substantial evidence.

## III

We review the remedies imposed by PERB with deference to its expertise (*see Matter of City of Albany v Helsby*, 29 NY2d 433, 439 [1972]). Thus "a remedy fashioned by PERB for an improper practice should be upheld if reasonable," although "[i]t is for the courts to examine the reasonable application of PERB's remedies" (*Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd.*, 61 AD3d 1231, 1234-1235 [3d Dept 2009] [citations and internal quotation marks omitted]; *see* Civil Service Law § 213 [d]). Here, PERB's remedial order requires the Town to "[f]orthwith restore the vehicle assignments for commutation between home and work to those unit members who enjoyed the benefit prior to April 4, 2008." A PERB injunction was not sought to preserve the status quo ante, and the Town sold some or all of the cars formerly permanently assigned to blue- and white-collar unit employees. Forcing the Town to invest significant taxpayer dollars to replace these vehicles is unduly burdensome under the circumstances, and does not further the goal of reaching a fair negotiated result (*cf. Matter of Manhasset Union Free School Dist.*, 61 AD3d at 1235 [enforcement of a PERB order for the school district to restore the personnel and facilities of its former transportation department was unreasonable where the district had sold its buses and leased its garage, and compliance with the order might require taxpayer approval]). We therefore remit so that PERB may fashion a remedy that grants commensurate, practical relief to the employees subject to the improper practice without requiring the Town to purchase a whole new fleet of vehicles with an uncertain future.

Accordingly, the order of the Appellate Division should be modified, without costs, by remitting thereto with directions to remand to PERB for further proceedings in accordance with this opinion and, as so modified, affirmed.

PIGOTT, J. (dissenting). The issue on this appeal is *not* whether a public employee's personal use of a take-home vehicle is an

economic benefit (majority op at 491-492), but, rather, whether a public employer must collectively bargain its way out of a previous policy that is plainly in violation of a duly-enacted local law. Chapter 14 of the Town Code of the Town of Islip entitled "Code of Ethics and Financial Disclosure Law" was adopted in December of 1968 and, apparently, as amended from time to time by the elected Town Board, has functioned without incident ever since. Section 14-12 of that law provides in its entirety as follows:

> "No officer or employee shall request or permit the use of Town-owned vehicles, equipment, material or property for *personal convenience* or profit, except when such services are available to the public generally or *are provided as municipal policy for the use of such officer or employee in the conduct of official business*" (emphasis added).

Contrary to the majority's contention (majority op at 493-494), the question whether a public employer may unilaterally discontinue a past practice concerning a term and condition of employment that a local law had declared illegal is squarely presented for our review.

In remarkably brief testimony from four witnesses, all employees of the Town, it is conceded that town employees were permitted to use municipal vehicles for personal use, namely, to drive town-owned vehicles to and from home. As such, the personal use of town-owned vehicles was plainly contrary to section 14-12. PERB erroneously concluded, however, that by allowing employees to drive vehicles home in violation of section 14-12, the Town could not unilaterally end that practice without violating the Taylor Law. Essentially, PERB's decision trumps a local law and requires the Town to bargain its way out of an illegal activity. This is contrary to law.

Illegal past conduct does not, and should not, evolve into binding terms and conditions of employment. Were it so, sloppy bookkeeping, lax supervision and perhaps, in some cases, rife favoritism could form the basis of a policy by which PERB could overrule a duly-enacted local law.

There was nothing in the previous collective bargaining agreements or in the laws and regulations of the Town that would allow public employees to take advantage of taxpayers by obtaining municipally-provided transportation at discount rates. By the same token, it cannot be argued that this would, by custom,

tradition, or negligence, be the subject of collective bargaining. It's clear. The conduct engaged in by the Town and its employees was against the law and PERB's determination could not make it legal. Therefore, that determination should be annulled and vacated.

Chief Judge LIPPMAN and Judges GRAFFEO, RIVERA and ABDUS-SALAAM concur with Judge READ; Judge PIGOTT dissents in an opinion in which Judge SMITH concurs.

Order modified, without costs, by remitting to the Appellate Division, Second Department, with directions to remand to the New York State Public Employment Relations Board for further proceedings in accordance with the opinion herein and, as so modified, affirmed.