*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 17, 2014                    518219
_____

In the Matter of SUSAN M.
    KENT, as President of the
    NEW YORK STATE PUBLIC
    EMPLOYEES FEDERATION,
    AFL-CIO,

                    Appellant,

        v

JEROME LEFKOWITZ, as                    MEMORANDUM AND ORDER
    Chair of the NEW YORK STATE
    PUBLIC EMPLOYMENT RELATIONS
    BOARD, et al.,

                    Respondents,
                    et al.,
                    Respondents.
_____

Calendar Date:  June 6, 2014

Before:  Lahtinen, J.P., Stein, Egan Jr., Devine and Clark, JJ.

_____

        Lisa M. King, New York State Public Employees Federation,
AFL-CIO, Albany (Steven M. Klein of counsel), for appellant.

        David P. Quinn, New York State Public Employment Relations
Board, Albany (Alicia L. McNally of counsel), for New York State
Public Employment Relations Board and another, respondents.

_____

Egan Jr., J.

        Appeal from a judgment of the Supreme Court (McNamara, J.),
entered April 3, 2013 in Albany County, which dismissed

petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Public Employment Relations Board dismissing an improper practice charge filed by petitioner against respondent New York State Racing and Wagering Board.

Petitioner is the president of the Public Employees Federation, AFL-CIO (hereinafter PEF), which is the duly certified collective bargaining representative of various state employees, including — insofar as is relevant here — seasonal personnel employed at the state's race tracks. These seasonal employees are exempt from civil service classification pursuant to Civil Service Law § 41 and are appointed by the chair of respondent New York State Racing and Wagering Board (hereinafter the Board)[1] to work during a specific track meet. Such employees are not allocated to a statutory salary grade and, as such, their compensation is set each year by the Board's chair — subject to the approval of the Director of the Budget (see State Finance Law §§ 44, 49).

Effective January 1, 1996, the Board's then chair announced a 25% reduction in the per diem pay rates of seasonal track employees, prompting PEF to file both a class action grievance under the collective bargaining agreement then in effect and an improper practice charge with respondent Public Employment Relations Board (hereinafter PERB), alleging — as to the latter — that the unilateral reduction in per diem wages for the affected track workers violated Civil Service Law § 209-a (1) (d). The improper practice charge was conditionally dismissed pending resolution of the related grievance but, after an arbitrator ruled, among other things, that the subject employees were not covered by the collective bargaining agreement, PEF successfully moved to reopen the improper practice charge. In response, the

---

[1]  Effective February 1, 2013, the Board merged into a newly-created entity known as the New York State Gaming Commission (see Racing, Pari-Mutuel Wagering and Breeding Law § 102).

Board answered and raised the affirmative defense of waiver.

Administrative hearings ensued in 2005 and, in January 2010, PERB's Assistant Director found that the wages for seasonal track employees were "a mandatory subject of bargaining" and, therefore, the unilateral pay reduction imposed by the Board violated Civil Service Law § 209-a (1) (d). Both PEF and the Board filed exceptions to this decision – with PEF's exceptions limited to the extent of the relief awarded. In September 2012, PERB dismissed the improper practice charge finding, among other things, that although the Board indeed had an obligation to negotiate wages for the seasonal workers, its duty in this regard was satisfied through the execution of a side letter agreement entered into between PEF and the state in October 1995. Petitioner thereafter commenced this CPLR article 78 proceeding to challenge PERB's determination. Supreme Court dismissed petitioner's application, prompting this appeal.

Petitioner initially contends that the Board failed to assert "duty satisfaction" as an affirmative defense in its answer to the improper practice charge and, therefore, PERB erred in considering this defense on the merits. We disagree. Although PERB has now drawn a distinction between the concept of "waiver" and "duty satisfaction," a review of PERB's decisions reveals that, prior to 1998, such terms often were used interchangeably to designate any defense based upon a prior fulfillment of the duty to negotiate (see Matter of Nassau County Sheriff's Corr. Officers Benevolent Assn., Inc. [County of Nassau], 46 PERB ¶ 3002 [2013], citing Matter of Police Benevolent Assn. of Police Dept. of County of Nassau [County of Nassau Police Dept.], 31 PERB ¶ 3064 [1998]; see also Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO, Livingston County Local 826, Livingston County Empl. Unit [County of Livingston], 26 PERB ¶ 3074 [1993]). As the Board's answer, which raised the affirmative defense of waiver, was interposed in 1997, i.e., at a point in time when waiver and duty satisfaction still were regarded as essentially one and the same defense, we deem the Board's answer to have properly raised the duty satisfaction defense.

As to the merits, "[a] duty satisfaction defense . . . is grounded upon a claim that the subject sought to be bargained has already been negotiated to completion, that the employer and the union have bargained and reached agreement on a subject and the employer is thereafter privileged to act in conformance with that agreement" (Matter of Amalgamated Tr. Union Local 1342 [Niagara Frontier Tr. Metro Sys., Inc.], 41 PERB ¶ 4566 [2008]).  Although the agreement under review need not expressly reference the contested subject matter in order to come within the scope of the duty satisfaction defense (see id.), the party asserting the defense bears "the burden of proving that the parties have negotiated terms in an agreement that are reasonably clear on the specific subject at issue" (Matter of Nassau County Sheriff's Corr. Officers Benevolent Assn., Inc. [County of Nassau], 46 PERB ¶ 3002, supra [emphasis added]; see Matter of Transport Workers Union of Greater N.Y., Local 100 [New York City Tr. Auth.], 41 PERB ¶ 3014 [2008]).  Stated another way, it must be reasonably clear — reading the relevant agreement as a whole — that the parties intended for it to encompass the specific subject matter under review, even if the agreement itself did not directly speak to that now contested issue.

Here, there is no question that the Board was under a duty to negotiate in good faith with PEF regarding compensation for the affected seasonal employees (see Civil Service Law §§ 200, 201 [4]; 203, 204 [3]; 209-a [1] [d]; State Finance Law §§ 44, 49) and, further, that the 25% reduction in such employees' wages was not in fact negotiated.  There also is no dispute that the side letter agreement made no express reference to the circumstances under which the seasonal employees' compensation could be reduced.  Hence, the only question remaining is whether the side letter agreement entered into between PEF and the state makes it reasonably clear that such document was intended to represent the parties' full agreement as to the compensation to be afforded to the seasonal track employees — including the 25% reduction in wages.  In this regard, the side letter agreement covered discrete compensation issues, including seasonal employees' eligibility for certain lump-sum payments (paragraph A), salary increases (paragraph B) and holiday compensation (paragraph D).  Paragraph C of the agreement, entitled "Effect of Minimum Wage Level," provided as follows: "If during the term of

this [a]greement the rate of compensation of any employee in a seasonal position is increased at the discretion of the Director of the Budget for the purpose of making such rate equal to the [f]ederal minimum wage level, the provisions of [p]aragraphs A and B . . . shall be applied to such seasonal employees in the following manner: 1. The seasonal employee's rate of compensation shall remain at the adjusted rate established by the Director of the Budget from the effective date established by the Director of the Budget until the date of the next general salary increase provided for in [p]aragraphs A or B.  2. Effective on the effective date of the next general salary increase provided for in [p]aragraphs A or B such employee's rate of compensation shall be either the adjusted rate established by the Director of the Budget; or his/her rate prior to the adjustment, increased by the percentage provided for in the applicable paragraph, whichever is higher."  Pursuant to paragraph D of the agreement, all of these provisions applied on a pro rata basis to seasonal employees paid on an hourly or per diem basis.

According to respondents, the foregoing language evidences the parties' intent to resolve any and all compensation issues relative to seasonal track employees — including a unilateral 25% reduction in their salaries.  Although we are mindful that PERB is to be afforded a measure of deference with respect to the interpretation of collective bargaining agreements and similar binding contracts between the state and its workers (see Matter of Monroe County v New York State Pub. Empl. Relations Bd., 85 AD3d 1439, 1441 [2011]), we simply do not believe that the side letter agreement at issue here is amenable to the expansive construction adopted by PERB and urged by respondents.  To be sure, the side letter agreement did not have to expressly address the circumstances under which the affected employees' salaries could be reduced in order to satisfy the state's duty to negotiate in good faith.  The terms set forth and the language utilized in the side letter agreement did, however, have to make it reasonably clear that PEF and the Board "bargained and reached [an] agreement" on this subject, thus demonstrating that the subject that formed the basis for the improper practice charge "already [was] negotiated to completion" (Matter of Amalgamated Tr. Union Local 1342 [Niagara Frontier Tr. Metro. Sys., Inc.], 41 PERB ¶ 4566, supra).  To our analysis, the provision in the side

letter agreement addressing the discretion afforded to the Director of the Budget to increase the rate of compensation to be paid to seasonal track employees in order to comply with federal minimum wage requirements does not evidence the intent of the parties thereto to address any and all situations under which the Director of the Budget could unilaterally adjust wage rates for the affected employees.  In other words, the side letter agreement is not, to our reading, sufficiently broad to demonstrate that the subject matter that formed the basis for the improper practice charge, i.e., the unilateral 25% reduction in wages, was negotiated to completion, and PERB's determination to the contrary was arbitrary and capricious.  Accordingly, the underlying determination is annulled, and this matter is remitted to PERB for further proceedings not inconsistent with this Court's decision.  In light of our resolution of this matter, we need not address petitioner's remaining contentions.

        Devine and Clark, JJ., concur.


Stein, J. (dissenting).

        We agree with the majority that respondent New York State Racing and Wagering Board (hereinafter the Board) properly raised the duty satisfaction defense in its answer in response to the improper practice charge filed by the Public Employees Federation, AFL-CIO (hereinafter PEF).  However, we are of the view that respondent Public Employment Relations Board (hereinafter PERB) correctly determined that the Board satisfied its obligation to negotiate wages for seasonal employees and dismissed the improper practice charge.  Thus, we disagree with the majority's conclusion to the contrary and, therefore, respectfully dissent.

        The Board's chair is authorized to set the compensation of seasonal employees, which is then subject to approval by the Director of the Budget (see State Finance Law §§ 44, 49).  In 1996, the chair exercised that discretionary authority and set a per diem compensation rate for seasonal personnel that was 25% lower than the prior year.  While there is no disagreement that the Board was under a duty to negotiate in good faith with

respect to the rate of compensation (see Civil Service Law §§ 200, 204 [3]; 209-a [1] [d]), we hold the view that it satisfied such obligation by means of its negotiations with PEF, which resulted in the execution of the October 1995 side letter agreement.

A review of such agreement – titled "MEMORANDUM OF INTERPRETATION BETWEEN THE STATE OF NEW YORK AND THE PUBLIC EMPLOYEES FEDERATION CONCERNING SEASONAL EMPLOYEES" – reveals that it was comprehensive and covered a broad range of issues regarding the compensation to be paid to seasonal personnel from 1995 through 1999. In fact, the agreement not only encompassed matters pertaining to specific compensation issues, it also incorporated more than 50 articles from the 1995-1999 collective bargaining agreement between PEF and the state regarding employees in the Professional, Scientific and Technical Services Units relating to a variety of employment and benefit related issues, such as health insurance, vacation credit, accidental death benefits and sick and personal leave. Viewed in this context, we disagree with the majority's characterization of the agreement as merely covering "discrete compensation issues."

Further, that portion of the side letter agreement that deals specifically with compensation covers lump-sum payments to be paid to seasonal employees for the 1996-1997 and 1997-1998 fiscal years, salary increases for 1997-1998 and 1998-1999 (including the effect of any increase in the federal minimum wage on the employees' next scheduled pay increase), holiday compensation and workers' compensation leave with pay. Notably, aside from the negotiated raises for 1997-1998 and 1998-1999, the agreement neither sets forth any limitation on the chair's discretion to set the seasonal employees' per diem compensation rates nor indicates that it was intended to be anything less than a comprehensive agreement as to such employees. Thus, despite the absence of any express reference to the exact compensation rates to be paid to such employees (see Matter of Amalgamated Tr. Union Local 1342 [Niagara Frontier Tr. Metro Sys., Inc.,], 41 PERB ¶ 4566 [2008]), it was reasonable for PERB to determine that the side letter agreement constituted the full agreement between the Board and PEF as to any limitations on the Board's wage-setting discretion. Indeed, when read in its entirety, the only

"practical interpretation" (<u>Matter of United Pub. Serv. Empl.</u>
<u>Union [Inc. Vil. of Mineola]</u>, 47 PERB ¶ 4540 [2014]) that can be
applied to the language of the side letter agreement is that the
parties reached an accord on the subject at issue in PEF's
improper practice charge.

Accordingly, when PERB's interpretation of the side letter
agreement is afforded the deference it is due (<u>see Matter of Town</u>
<u>of Islip v New York State Pub. Empl. Relations Bd.</u>, ___ NY3d ___,
___, 2014 NY Slip Op 04043, *7 [2014]; <u>Matter of Professional</u>
<u>Staff Congress-City Univ. of N.Y. v New York State Pub. Empl.</u>
<u>Relations Bd.</u>, 7 NY3d 458, 465 [2006]; <u>Matter of Incorporated</u>
<u>Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.</u>, 48
NY2d 398, 404 [1979]; <u>Matter of Monroe County v New York State</u>
<u>Pub. Empl. Relations Bd.</u>, 85 AD3d 1439, 1441 [2011]), its
determination that the Board met its burden of establishing that
it satisfied its duty to negotiate with petitioner is rational
and not arbitrary and capricious (<u>see Matter of Town of Islip v</u>
<u>New York State Pub. Empl. Relations Bd.</u>, 2014 NY Slip Op 04043 at
*7; <u>Matter of Chenango Forks Cent. Sch. Dist. v New York State</u>
<u>Pub. Empl. Relations Bd.</u>, 21 NY3d 255, 265 [2013]; <u>Matter of</u>
<u>Monroe County v New York State Pub. Empl. Relations Bd.</u>, 85 AD3d
at 1441).[2]  We would, therefore, affirm Supreme Court's dismissal
of the CPLR article 78 petition.

Lahtinen, J.P., concurs.

---

[2]  Nor are we persuaded by petitioner's argument that
application of the duty satisfaction defense is contrary to
public policy under the circumstances here.

ORDERED that the judgment is reversed, on the law, without costs, determination annulled and matter remitted to respondent Public Employment Relations Board for further proceedings not inconsistent with this Court's decision.

ENTER:

Robert D. Mayberger
Clerk of the Court