Stein, J.
(dissenting). We agree with the majority that respondent New York State Racing and Wagering Board (hereinafter the Board) properly raised the duty satisfaction defense in its answer in response to the improper practice charge filed by the Public Employees Federation, AFL-CIO (hereinafter PEF). However, we are of the view that respondent Public Employ *1213 ment Relations Board (hereinafter PERB) correctly determined that the Board satisfied its obligation to negotiate wages for seasonal employees and dismissed the improper practice charge. Thus, we disagree with the majority’s conclusion to the contrary and, therefore, respectfully dissent.
The Board’s chair is authorized to set the compensation of seasonal employees, which is then subject to approval by the Director of the Budget (see State Finance Law §§ 44, 49). In 1996, the chair exercised that discretionary authority and set a per diem compensation rate for seasonal personnel that was 25% lower than the prior year. While there is no disagreement that the Board was under a duty to negotiate in good faith with respect to the rate of compensation (see Civil Service Law §§ 200, 204 [3]; 209-a [1] [d]), we hold the view that it satisfied such obligation by means of its negotiations with PEF, which resulted in the execution of the October 1995 side letter agreement.
A review of such agreement — titled “MEMORANDUM OF INTERPRETATION BETWEEN THE STATE OF NEW YORK AND THE PUBLIC EMPLOYEES FEDERATION CONCERNING SEASONAL EMPLOYEES” — reveals that it was comprehensive and covered a broad range of issues regarding the compensation to be paid to seasonal personnel from 1995 through 1999. In fact, the agreement not only encompassed matters pertaining to specific compensation issues, it also incorporated more than 50 articles from the 1995-1999 collective bargaining agreement between PEF and the state regarding employees in the Professional, Scientific and Technical Services Units relating to a variety of employment and benefit related issues, such as health insurance, vacation credit, accidental death benefits and sick and personal leave. Viewed in this context, we disagree with the majority’s characterization of the agreement as merely covering “discrete compensation issues.”
Further, that portion of the side letter agreement that deals specifically with compensation covers lump-sum payments to be paid to seasonal employees for the 1996-1997 and 1997-1998 fiscal years, salary increases for 1997-1998 and 1998-1999 (including the effect of any increase in the federal minimum wage on the employees’ next scheduled pay increase), holiday compensation and workers’ compensation leave with pay. Notably, aside from the negotiated raises for 1997-1998 and 1998-1999, the agreement neither sets forth any limitation on the chair’s discretion to set the seasonal employees’ per diem compensation rates nor indicates that it was intended to be anything less than a *1214 comprehensive agreement as to such employees. Thus, despite the absence of any express reference to the exact compensation rates to be paid to such employees (see Matter of Amalgamated Tr. Union Local 1342 [Niagara Frontier Tr. Metro Sys., Inc.], 41 PERB ¶ 4566 [2008]), it was reasonable for PERB to determine that the side letter agreement constituted the full agreement between the Board and PEF as to any limitations on the Board’s wage-setting discretion. Indeed, when read in its entirety, the only “practical interpretation” (Matter of United Pub. Serv. Empl. Union [Inc. Vil. of Mineola], 47 PERB ¶ 4540 [2014]) that can be applied to the language of the side letter agreement is that the parties reached an accord on the subject at issue in PEF’s improper practice charge.
Accordingly, when PERB’s interpretation of the side letter agreement is afforded the deference it is due (see Matter of Town of Islip v New York State Pub. Empl. Relations Bd., 23 NY3d 482, 492-493 [2014]; Matter of Professional Staff Congress-City Univ. of N.Y. v New York State Pub. Empl. Relations Bd., 7 NY3d 458, 465 [2006]; Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd., 48 NY2d 398, 404 [1979]; Matter of Monroe County v New York State Pub. Empl. Relations Bd., 85 AD3d 1439, 1441 [2011]), its determination that the Board met its burden of establishing that it satisfied its duty to negotiate with petitioner is rational and not arbitrary and capricious (see Matter of Town of Islip v New York State Pub. Empl. Relations Bd., 23 NY3d 482, 492-493 [2014]; Matter of Chenango Forks Cent. Sch. Dist. v New York State Pub. Empl. Relations Bd., 21 NY3d 255, 265 [2013]; Matter of Monroe County v New York State Pub. Empl. Relations Bd., 85 AD3d at 1441).[2] We would, therefore, affirm Supreme Court’s dismissal of the CPLR article 78 petition.
Lahtinen, J.R, concurs.
Ordered that the judgment is reversed, on the law, without costs, determination annulled and matter remitted to respondent Public Employment Relations Board for further proceedings not inconsistent with this Court’s decision.

. Nor are we persuaded by petitioner’s argument that application of the duty satisfaction defense is contrary to public policy under the circumstances here.