[54 NE3d 1149, 35 NYS3d 278]

In the Matter of Susan M. Kent, as President of the New York State Public Employees Federation, AFL-CIO, Respondent, v Jerome Lefkowitz, as Chairman of the New York State Public Employment Relations Board, et al., Appellants.

Argued March 30, 2016; decided May 10, 2016

*David P. Quinn*, Albany, for Jerome Lefkowitz and another, appellants.

*Eric T. Schneiderman, Attorney General*, Albany (*Julie M. Sheridan, Barbara D. Underwood* and *Andrea Oser* of counsel), for New York State Governor's Office of Employee Relations and another, appellants.

*Lisa M. King*, Albany, for respondent.

**OPINION OF THE COURT**

Chief Judge DiFiore.

In January 1996, respondent New York State Racing and Wagering Board reduced per diem wages for its seasonal employees by 25%. In response, the New York State Public Employees Federation, AFL-CIO (PEF) filed an improper practice charge, alleging that the reduction in wages violated Civil Service Law § 209-a (1) (d). In this CPLR article 78 proceeding, the issue is whether the decision of respondent Public Employment Relations Board (PERB), dismissing that improper practice charge, was affected by an error of law or was arbitrary and capricious or an abuse of discretion. We conclude that it was not.

## I.

PEF is the certified collective bargaining representative for the Professional, Scientific and Technical Services Unit of New York State employees. That unit includes seasonal track personnel employed by the Racing Board,[1] an entity within the executive branch of New York State government. Seasonal track employees are exempt from civil service classification under Civil Service Law § 41 and are appointed each year by the chair of the Racing Board to work during a specific season from opening date until closing date. The compensation of such employees is set each year by the Racing Board chair, subject to the approval of the Director of the Budget (State Finance Law §§ 44, 49).

In October 1995, PEF and the executive branch of the State—through its bargaining agent respondent New York State Governor's Office of Employee Relations (GOER)—entered into a collective bargaining agreement (CBA) that was operative from 1995 to 1999. Appendix II of the CBA contained a "Memorandum of Interpretation," or side letter agreement,

---

1. Effective February 1, 2013, the Racing Board merged into the New York State Gaming Commission, a newly created entity.

which addressed terms and conditions of the employment of seasonal employees. Section 1 of the side letter agreement incorporated by reference more than 50 articles from the CBA. Section 2 of the side letter agreement, labeled "Compensation," covered—in specific detail—lump-sum payments (in paragraph [A]) and salary increases for eligible employees (in paragraph [B]) for specific fiscal years covered by the CBA. Paragraph (C) addressed the effect on a seasonal employee's rate of compensation "[i]f during the term of th[e] Agreement the rate of compensation of any employee in a seasonal position [wa]s increased at the discretion of the Director of the Budget for the purpose of making such rate equal to the [f]ederal minimum wage level." Paragraph (D) of the side letter agreement expressly made paragraphs (A) through (C) applicable to seasonal employees paid on a per diem basis. The side letter agreement also covered holiday compensation and workers' compensation.

In January 1996, approximately two months after the side letter agreement was executed, the Racing Board's chair announced a 25% reduction in the per diem pay of seasonal track employees, effective with the January 1996 appointments. In response, PEF filed an improper practice charge with PERB, alleging that this reduction violated the Racing Board's duty to negotiate in good faith under Civil Service Law § 209-a (1) (d). The Racing Board answered, raising the affirmative defense of waiver.[2] After administrative hearings, PERB's Assistant Director rejected the waiver defense and found a violation of Civil Service Law § 209-a (1) (d). The Racing Board filed exceptions to that decision. PEF also filed exceptions, which focused on the relief awarded by the Assistant Director.

PERB dismissed the improper practice charge. It found that, while the Racing Board had an obligation to negotiate the wages of seasonal employees, the side letter agreement was "a negotiated limitation upon the State Budget Director's discretion with respect to unilateral adjustments in the rates of compensation for seasonal positions in the unit" and, therefore, the duty to negotiate was satisfied (45 PERB ¶ 3041 [2012]).

---

**2.** At the time the Racing Board's answer was filed, PERB did not distinguish between the defenses of duty satisfaction and waiver (*Matter of Kent v Lefkowitz*, 119 AD3d 1208, 1210 [3d Dept 2014]). Accordingly, as the Appellate Division majority and dissent agreed, the Racing Board "properly raised the duty satisfaction defense" (*id.* at 1210, 1212).

Petitioner, then president of PEF, commenced this CPLR article 78 proceeding, arguing that PERB's determination was "arbitrary, capricious, irrational and contrary to law." Supreme Court dismissed the petition, finding that "PERB's experience with the subtleties of how parties negotiate a collective bargaining agreement ma[d]e it uniquely qualified to frame the issue and having done so in a reasoned manner, the court may not interfere" (46 PERB ¶ 7006 [2013]).

The Appellate Division reversed, with two Justices dissenting (119 AD3d 1208). The majority held that "PERB's determination . . . was arbitrary and capricious" because it "d[id] not believe" that the side letter agreement demonstrated that the Racing Board negotiated the unilateral 25% reduction in wages (*id.* at 1212). The dissent opined that "when PERB's interpretation of the side letter agreement is afforded the deference it is due, its determination that the [Racing] Board met its burden of establishing that it satisfied its duty to negotiate with [PEF] is rational and not arbitrary and capricious" (*id.* at 1214 [citations omitted]).

Respondents—PERB (and its Chairman), GOER, and the Racing Board—appeal as of right pursuant to CPLR 5601 (a).

## II.

Pursuant to the State Finance Law, the chair of the Racing Board has the discretion to set the compensation of seasonal track employees, including per diem compensation, "subject to the approval of the director of the budget" (State Finance Law § 44 [1]; *see also id.* § 49). Nevertheless, the Taylor Law—namely, Civil Service Law § 209-a (1) (d)—makes it an improper practice for a public employer, in this case the Racing Board, "to refuse to negotiate in good faith with the duly recognized or certified representatives of its public employees"—in this case, PEF. The parties do not dispute that per diem compensation rates must be negotiated. Instead, the parties dispute whether this duty to negotiate was satisfied by the negotiation of the side letter agreement.

"Duty satisfaction occurs when a specific subject has been negotiated to fruition and may be established by contractual terms that either expressly or implicitly demonstrate that the parties had reached accord on that specific subject" (*Matter of Nassau County Sheriff's Corr. Officers Benevolent Assn., Inc. [County of Nassau]*, 48 PERB ¶ 3014 [2015]). To succeed on a duty satisfaction defense, "a respondent has the burden of prov-

ing that the parties have negotiated terms in an agreement that are reasonably clear on the specific subject at issue" (*Matter of Nassau County Sheriff's Corr. Officers Benevolent Assn., Inc. [County of Nassau]*, 46 PERB ¶ 3002 [2013]). That determination requires PERB "to interpret the meaning of the agreement through the application of standard principles of contract interpretation" (*Matter of Shelter Is. Faculty Assn., NYSUT, AFT, NEA, AFL-CIO [Shelter Is. Union Free Sch. Dist.]*, 45 PERB ¶ 3032 [2012]).

Our scope of review in this context is limited to whether PERB's decision "was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; *see also Matter of Town of Islip v New York State Pub. Empl. Relations Bd.*, 23 NY3d 482, 492 [2014] [internal quotation marks omitted]). Moreover, as we have recognized, "PERB is accorded deference in matters falling within its area of expertise" (*Matter of Town of Islip*, 23 NY3d at 492). This includes "the resolution of improper practice charges" (*Matter of Poughkeepsie Professional Firefighters' Assn., Local 596, IAFF, AFL-CIO-CLC v New York State Pub. Empl. Relations Bd.*, 6 NY3d 514, 522 [2006]).

Respondents argue that the side letter agreement made it "reasonably clear" that the parties satisfied their bargaining obligations concerning limits to be placed on the Budget Director's discretion to set wages. Specifically, respondents argue that paragraph (C) of the side letter agreement shows that, outside the specific negotiated wage increases, the parties understood that the Budget Director retained the statutory discretion to set wages. Respondents further argue that the Appellate Division erred by declining to defer to, and substituting its own judgment for, PERB's construction of the parties' side letter agreement.

Petitioner argues that the "specific subject" of the improper practice charge is the 25% wage decrease and that it is not reasonably clear from the side letter agreement that PEF and the Racing Board negotiated concerning the Budget Director's ability to unilaterally reduce wages. According to petitioner, PERB's determination was in error and the Appellate Division's order holding it arbitrary and capricious should be affirmed.

### III.

By statute, the per diem compensation for seasonal employees is set at the discretion of the Racing Board chair, subject to

the approval of the Budget Director (State Finance Law §§ 44, 49). That statutorily authorized discretion can be limited through the collective bargaining process. Here, PERB found that the side letter agreement, which incorporated more than 50 provisions of the CBA, comprehensively addressed the parties' agreement with respect to limits on that discretion. PERB's decision was rational and supported by the language of the side letter agreement.

The side letter agreement sets out the specific circumstances that limit the Budget Director's discretion to set wages. Paragraphs (A), (B), and (C) of section 2 of the side letter agreement each address specific areas of compensation. Section 2 (A) details lump-sum payments to be paid to eligible employees in fiscal years 1996-1997 and 1997-1998. Section 2 (B) limits the Budget Director's discretion to set the wage rates for fiscal years 1997-1998 and 1998-1999 by mandating a 3.5% increase for eligible employees. Section 2 (C) provides that even if the Budget Director "at [his/her] discretion" increases wages to comply with federal minimum wage requirements, the increases outlined in sections 2 (A) and 2 (B) will still be implemented to the extent that they raised the employees' wages above the federal minimum wage.

The side letter agreement was comprehensive in addressing all conditions of employment for seasonal employees for 1995 to 1999. It included specific pay increases for specific years, but not for the fiscal year in which the 25% reduction took effect. The side letter agreement did not rule out pay reductions and did not impose any conditions precedent to pay reductions.[3] Thus, PERB's conclusion that it was "reasonably clear" that both sides intended the side letter agreement "to act as a negotiated limitation upon the State Budget Director's discretion" as to compensation for seasonal employees was not arbitrary and capricious (45 PERB ¶ 3401). Contrary to the dissent's characterization, the decision is supported not just by the quantity of items contained in the side letter agreement, but by specific items expressly limiting the discretion otherwise delegated to the Racing Board chair and Budget Director by statute. PERB's decision should be accorded deference as a decision within its area of expertise. Read as a whole, the language of the side letter agreement "implicitly demonstrate[s]

---

**3.** Notably, on at least one occasion prior to 1996, the wages of seasonal employees were reduced at the discretion of the Racing Board chair.

that the parties had reached accord" with respect to any limitations on the discretionary authority of the Budget Director to change the per diem compensation of seasonal employees.

While the respondents highlight the explicit mention of the "discretion of the Director of the Budget" in section 2, paragraph (C), of the side letter agreement, it is not this language alone that supports the conclusion reached by PERB. Each of the compensation sections of the side letter agreement demonstrates negotiation with respect to the statutorily authorized discretion.

Accordingly, the order of the Appellate Division should be reversed, without costs, and the judgment of Supreme Court reinstated.

FAHEY, J. (dissenting). I respectfully dissent and would affirm the Appellate Division order. The side letter agreement is the product of a negotiation between the New York State Public Employees Federation, AFL-CIO (PEF) and respondent New York State Governor's Office of Employee Relations. Both of those sophisticated entities are well schooled in the art of negotiation. To say that PEF implicitly agreed to a 25% wage reduction strains credulity.

The majority essentially concludes that because the side letter incorporates more than 50 articles from the 1995-1999 collective bargaining agreement (CBA) between PEF and the State regarding employees in the Professional, Scientific and Technical Services Unit, the compensation reduction now in question necessarily was negotiated by PEF and the State—even though it is undisputed that neither those articles nor the balance of the side letter considers that issue. In doing so, the majority supposes that because many parts of the CBA were incorporated into the side letter, and because the side letter otherwise considers salary increases, the compensation reduction now at issue must have been contemplated by that agreement.*

Although respondent New York State Public Employment Relations Board (PERB) is entitled to "deference in matters

---

* This case is governed by the Taylor Law (Civil Service Law § 200 *et seq.*), which, in matters within its purview, imposes a "strong and sweeping" obligation (*Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660, 667 [1990] [internal quotation marks omitted]) to "collective[ly] bargain[ ] over *all* 'terms and conditions of employment' " (*Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.*, 6 NY3d 563, 572 [2006] [emphasis

falling within its area of expertise" (*Matter of Town of Islip v New York State Pub. Empl. Relations Bd.*, 23 NY3d 482, 492 [2014] [internal quotation marks omitted]), and although this Court generally is reluctant to disturb a determination of PERB (*see Matter of Poughkeepsie Professional Firefighters' Assn., Local 596, IAFF, AFL-CIO-CLC v New York State Pub. Empl. Relations Bd.*, 6 NY3d 514, 522 [2006]), I do not presume that the adoption of many aspects of the CBA and the side letter's consideration of pay *increases* means that the subject pay *decrease* was negotiated here.

Indeed, the deference afforded PERB, while "great" (*Matter of Town of Southampton v New York State Pub. Empl. Relations Bd.*, 2 NY3d 513, 520 [2004]), is not unbounded. Respondent New York State Racing and Wagering Board, the employer of the affected workers, relies on an affirmative defense of duty satisfaction, that is, a defense for which it bears the burden of proof (*see* Siegel, NY Prac § 223 at 381 [5th ed 2011]). I cannot conclude that such affirmative defense has been satisfied where, as here, the parties to the negotiation carefully noted the items that had been negotiated and intentionally omitted therefrom the subject matter that is now in dispute.

Said another way, in assessing the side letter we should not confuse quantity with specificity so as to conclude that the absent item is present. Under these circumstances, I cannot agree that an item absent from an agreement containing a comprehensive explanation of negotiated items prepared by sophisticated parties somehow is encompassed by that compact. For those reasons, I agree with the Appellate Division that PERB's determination that the side letter embraced the pay reduction in question is arbitrary and capricious, and I respectfully dissent.

Judges PIGOTT, RIVERA, ABDUS-SALAAM and GARCIA concur; Judge FAHEY dissents in an opinion; Judge STEIN taking no part.

Order reversed, without costs, and judgment of Supreme Court, Albany County, reinstated.

added], quoting Civil Service Law § 204 [2]; *see Matter of New York City Tr. Auth. v New York State Pub. Empl. Relations Bd.*, 19 NY3d 876, 879 [2012]).