[993 NE2d 386, 970 NYS2d 900]

In the Matter of CHENANGO FORKS CENTRAL SCHOOL DISTRICT, Appellant, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents.

Argued April 25, 2013; decided June 6, 2013

**POINTS OF COUNSEL**

*Coughlin & Gerhart LLP*, Endicott (*Lars P. Mead* of counsel), for appellant. I. The Public Employment Relations Board improperly refused to defer to the arbitrator's finding that there was insufficient evidence of a binding past practice. (*Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*,

93 NY2d 132; *Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva*, 92 NY2d 326; *Matter of Roma v Ruffo*, 92 NY2d 489.) II. The Chenango Forks Teachers Association does not have a contractual right to continued Medicare Part B reimbursement; as such, the Public Employment Relations Board's decision is based upon an error of law. (*Matter of Bryant v Board of Educ., Chenango Forks Cent. School Dist.*, 21 AD3d 1134.) III. The provision of Medicare Part B reimbursement to certain district retirees does not constitute a term and condition of employment; thus, the Public Employment Relations Board's determination was based upon an error of law. (*Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398; *Chemical Workers v Pittsburgh Plate Glass Co.*, 404 US 157; *Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva*, 92 NY2d 326.) IV. The Public Employment Relations Board erred in failing to find that the improper practice charge is moot, as the Chenango Forks Central School District and the Chenango Forks Teachers Association negotiated a new collective bargaining agreement which contains a "complete agreement" clause but does not provide for Medicare Part B benefits. V. The Chenango Forks Central School District's continued provision of Medicare Part B benefits would constitute an impermissible gift of public funds and the Public Employment Relations Board's determination was based upon an error of law. (*Piro v Bowen*, 76 AD2d 392, 52 NY2d 702; *Matter of Karp v North Country Community Coll.*, 258 AD2d 775.) VI. The Public Employment Relations Board's decision is not based upon substantial evidence. (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176; *Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179; *People ex rel. Vega v Smith*, 66 NY2d 130.)

*David P. Quinn*, Albany, for New York State Public Employment Relations Board, respondent. I. The Public Employment Relations Board was not arbitrary, capricious or affected by error of law in concluding that the reimbursement of Medicare Part B insurance premiums for active employees after they retire upon reaching age 65 is mandatorily negotiable under the Taylor Law. (*Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398; *Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington*, 30 NY2d 122.) II. The Public Employment Relations Board was not arbitrary, capricious or affected by error of law in concluding that the Chenango Forks Central School District's practice of reimbursing Medicare Part

B insurance premiums for active employees after they retire upon reaching age 65 established a negotiable past practice cognizable under the Taylor Law. (*Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd.*, 61 AD3d 1231; *Matter of Fashion Inst. of Tech. v New York State Pub. Empl. Relations Bd.*, 68 AD3d 605; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of Bergstein v Board of Educ., Union Free School Dist. No. 1 of Towns of Ossining, New Castle & Yorktown*, 34 NY2d 318; *Matter of Gray v Adduci*, 73 NY2d 741; *Matter of Berenhaus v Ward*, 70 NY2d 436.) III. The Public Employment Relations Board was not arbitrary, capricious or affected by error of law in concluding that it was not bound by the arbitrator's opinion that the Chenango Forks Central School District had no binding past practice of reimbursing active employees for Medicare Part B premiums after they retire upon reaching age 65. (*Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, Erie County Local 815, Erie County White Collar Empls. Unit v State of N.Y., Publ. Empl. Relations Bd.*, 213 AD2d 897; *Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd.*, 61 AD3d 1231; *Board of Educ. for City School Dist. of City of Buffalo v Buffalo Teachers Fedn.*, 89 NY2d 370; *Matter of Poughkeepsie Professional Firefighters' Assn., Local 596, IAFF, AFL-CIO-CLC v New York State Pub. Empl. Relations Bd.*, 6 NY3d 514; *Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd.*, 83 NY2d 315; *Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd.*, 95 NY2d 73; *National Labor Relations Bd. v Owners Maintenance Corp.*, 581 F2d 44; *Ciba-Geigy Pharms. Div. v National Labor Relations Bd.*, 722 F2d 1120; *Mobil Exploration & Producing U.S., Inc. v National Labor Relations Bd.*, 200 F3d 230.) IV. The Public Employment Relations Board was not arbitrary, capricious or affected by error of law in concluding that the record does not support the Chenango Forks Central School District's affirmative defenses that it satisfied its duty to negotiate with the Chenango Forks Teachers Association concerning its announcement that it was terminating the at-issue practice or that the Association waived its bargaining rights concerning that announcement. (*Matter of Ferreri v New York State Thruway Auth.*, 62 NY2d 855; *Matter of Civil Serv. Empls. Assn. v Newman*, 88 AD2d 685, 61 NY2d 1001; *Matter of Monroe County v New York State Pub. Empl. Relations Bd.*, 85 AD3d 1439; *Matter of Patrolmen's Benevolent Assn. of Vil. of Walden v Kinsella*, 263

AD2d 885; *Matter of Greece Support Serv. Empls. Assn., NEA/ N.Y. v Public Empl. Relations Bd.*, 250 AD2d 980.)

*Richard E. Casagrande*, Latham, for Chenango Forks Teachers Association, respondent. I. Judicial deference should be given to Public Employment Relations Board's determination. (*Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660; *Matter of West Irondequoit Teachers Assn. v Helsby*, 35 NY2d 46.) II. The continuation of Medicare Part B reimbursement to current bargaining unit members who retire and reach age 65 is a mandatory subject of negotiation. (*Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva*, 92 NY2d 326; *Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398; *Matter of Bryant v Board of Educ., Chenango Forks Cent. School Dist.*, 21 AD3d 1134; *Matter of Baker v Board of Educ.*, 29 Misc 3d 706, 29 AD3d 574, 7 NY2d 708.) III. An enforceable Taylor Law past practice exists. (*Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva*, 92 NY2d 326; *Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd.*, 61 AD3d 1231; *Matter of Fashion Inst. of Tech. v New York State Pub. Empl. Relations Bd.*, 68 AD3d 605; *Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398; *Matter of Roma v Ruffo*, 92 NY2d 489; *Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York*, 94 NY2d 321; *Steelworkers v Enterprise Wheel & Car Corp.*, 363 US 593.) IV. Substantial evidence supports the Public Employment Relations Board's determination that the relevant history of reimbursing Medicare Part B insurance premiums constitutes a negotiable past practice. (*Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd.*, 61 AD3d 1231; *Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v New York State Pub. Empl. Relations Bd.*, 301 AD2d 946; *Matter of Uniondale Union Free School Dist. v Newman*, 167 AD2d 475, 77 NY2d 809; *Matter of Collins v Codd*, 38 NY2d 269; *Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v New York State Pub. Empl. Relations Bd.*, 2 AD3d 1197; *Matter of Romaine v Cuevas*, 305 AD2d 968; *Matter of Bergstein v Board of Educ., Union Free School Dist. No. 1 of Towns of Ossining, New Castle & Yorktown*, 34 NY2d 318; *Matter of Gray v Adduci*, 73 NY2d 741; *Matter of JMH, Inc. v New York State Liq. Auth.*, 61 AD3d 1260.) V. The Court should defer to the

Public Employment Relations Board's determination that the record does not establish that the Chenango Forks Central School District satisfied its duty to negotiate with the Chenango Forks Teachers Association or that the Association waived its bargaining rights. (*Matter of Civil Serv. Empls. Assn. v Newman*, 88 AD2d 685, 57 NY2d 775; *Matter of Greece Support Serv. Empls. Assn., NEA/N.Y. v Public Empl. Relations Bd.*, 250 AD2d 980.) VI. The at-issue benefit is not an unconstitutional gift of public funds. (*Gagliardo v Dinkins*, 89 NY2d 62; *Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington*, 30 NY2d 122; *Matter of Fashion Inst. of Tech. v New York State Pub. Empl. Relations Bd.*, 68 AD3d 605.)

### OPINION OF THE COURT

READ, J.

On June 12, 2003, the Chenango Forks Central School District (the School District or the District) circulated a memorandum to its faculty and staff, represented by the Chenango Forks Teachers Association, NYSUT, AFT, AFL-CIO, Local 2651 (the Union), announcing termination, due to costs, of the District's practice of reimbursing Medicare Part B premiums of retirees 65 years of age or older. The School District was at one time required by its health care insurance plan to reimburse these premiums. But in 1988, the parties negotiated a switch to a new plan, which was reflected in the collective bargaining agreement (CBA) they entered into in 1990. Although the new plan did not require provision of this benefit, the District nonetheless continued it.[1] The 2001-2004 CBA, in place in June 2003, said nothing about Medicare Part B premium reimbursement. Similarly, the 2004-2007 CBA, entered into in January 2005, was silent on this issue, and the parties agree that the topic was not raised during contract negotiations.

The Union filed a contract grievance on July 24, 2003, claiming that the School District had violated the CBA by failing to negotiate cancellation of Medicare Part B premium reimbursement. And on September 12, 2003, the Union filed an improper practice charge with the New York State Public Employment Relations Board (PERB or the Board). There, the Union asserted that the District had violated the Public Employees' Fair Employment Act (the Taylor Law), Civil Service Law § 209-a (1) (d), by unilaterally discontinuing Medicare Part B premium

---

1. The School District later stated this was an administrative oversight.

reimbursement. The Union characterized these reimbursements as a benefit that accrues to employees while they are employed, to be paid to them when they retire. On December 12, 2003, Administrative Law Judge (ALJ) Quinn, at the District's request, conditionally dismissed the improper practice charge, subject to a motion to reopen. In light of the pending grievance, he noted, "it [was] PERB's policy to refrain from asserting jurisdiction over the at-issue dispute until a determination is made as to whether the parties' [CBA] provide[d] a source of right to the charging party."

A hearing was held on the contract grievance in September 2004. In his opinion and award executed on November 6, 2004, the arbitrator concluded there was no language in the CBA requiring the School District to reimburse retirees' Medicare Part B premiums, or clauses extending to matters not covered by the CBA or mandating maintenance of standards.[2] As a result, he found "no basis in the [CBA] upon which to sustain the grievance." In ruling that the District was not contractually obligated to reimburse Medicare Part B premiums, the arbitrator commented that he was

> "mindful of the evidence regarding historical practices. As to Medicare Part B reimbursements, however, such practices originated from the former [health care plan] and a now repealed statutory obligation on the part of the District, and once the statutory obligation was removed, the District made voluntary Medicare Part B reimbursement payments to retirees. *The voluntariness of the District's conduct, given the origin of the District's Medicare Part B reimbursements, does not contain sufficient evidence of a mutual understanding and agreement to establish a binding past practice*" (emphasis added).

---

2. A "maintenance of standards" or "maintenance of benefits" clause in a labor contract requires all existing conditions of employment, except those specifically changed by the contract, to be continued during the term of a new contract. Such a clause effectively confirms past practices contractually (*see Matter of Meegan v Brown*, 81 AD3d 1403, 1404-1405 [4th Dept 2011]; *see also Matter of City of Buffalo [Fire Dept.] [Buffalo Professional Firefighters Assn., Inc., Local 282, I.A.F.F., AFL-CIO]*, 17 PERB ¶ 3090 [1984] [noting that "a maintenance of benefits clause . . . may, with respect to a mandatory subject of negotiation, . . . create a contractual right that complements the statutory right to the maintenance of past practices. The contractual right, however, does not extinguish the statutory right"]).

After the arbitrator's decision was issued, the Union asked PERB to reopen the improper practice charge. On December 31, 2004, ALJ Quinn granted the Union's request, over the School District's opposition. He opined that because "the arbitrator found no [contractual] source of right to [the Union] with respect to the dispute at issue . . . , [the Union was] not seeking to enforce an agreement in the context of the charge, and PERB [had] jurisdiction over the alleged failure to continue a non-contractual practice." ALJ Quinn transmitted the charge for reassignment to a decisional ALJ.

In a decision dated August 22, 2006, based on stipulated facts, ALJ Comenzo concluded that the School District had violated Civil Service Law § 209-a (1) by circulating the June 12, 2003 memorandum. She found that there existed a past practice of providing a benefit—i.e., the promise to reimburse current employees' post-retirement Medicare Part B premiums—which is a mandatory subject of bargaining. Accordingly, the ALJ directed the District to rescind the memorandum.

In so ruling, ALJ Comenzo rejected several defenses advanced by the School District; in particular, that "the arbitrator's finding that there [was] no past practice is binding" on PERB. In that regard, she noted that

> "in addressing the [Union's] grievance, the arbitrator specifically observed that his jurisdiction lay within the four corners of the [CBA], which, he found, contains no maintenance of standards clause to cover past practices. Thus, his opinion that there is no past practice concerning the at-issue benefit is entirely *dicta*, which is neither binding nor convincing."

The School District filed exceptions, dated October 2, 2006, requesting that PERB rescind the ALJ's decision. In its ensuing decision and order dated July 25, 2007, the Board focused on whether the District's long-standing reimbursement of Medicare Part B premiums constituted a binding past practice within the meaning of the Taylor Law. The School District cited the arbitrator's decision as proof there was no past practice; the Union pointed out that this benefit had been afforded employees since at least 1980. PERB endorsed the ALJ's view that the arbitrator's statement, relied upon by the District, was "entirely *dicta*" and "neither convincing nor binding." The Board added that, to the extent the "arbitrator's statement . . . may have

been intended to apply the [Taylor Law's] criteria for the establishment of a past practice, it was repugnant to [that statute]" (40 PERB ¶ 3012 [2007]).

PERB stated that the test for establishing a binding past practice under the Taylor Law was set out in its decision in *Matter of County of Nassau* (24 PERB ¶ 3029 [1991]); namely, that the "practice was unequivocal and was continued uninterrupted for a period of time sufficient under the circumstances to create a reasonable expectation among the affected [bargaining] unit employees that the [practice] would continue" (*id.* ¶ 3058). Further, "the expectation of the continuation of the practice is something that may be presumed from its duration with consideration of the specific circumstances under which the practice has existed."

Applying the *County of Nassau* test to the facts, PERB found that the School District had actual or constructive knowledge of the practice, given the level of expenditure of revenue to multiple retirees (about $500,000 between 1988 and 2003), with such payments being documented in the District's records and subject to review during the preparation of annual budgets. The Board added that, even without these circumstances, "the extended period of the practice alone . . . would have constituted circumstantial evidence sufficient to establish a *prima facie* proof of the employer's knowledge."

PERB decided, however, that it was unable to apply the "reasonable expectation" prong of the *County of Nassau* test because the stipulated record was inadequate. Specifically, the record was "ambiguous" regarding whether active employees and the Union had knowledge of the payments to retirees, and thus harbored a "reasonable expectation" that they would receive this benefit, too. Accordingly, the Board remanded the charge for the ALJ to take additional evidence and decide this issue.

On January 30, 2008, the School District and the Union participated in an evidentiary hearing before ALJ Comenzo. The Union presented 11 witnesses who were employees of the District and Union members; these witnesses generally testified that they had been aware of the Medicare Part B premium reimbursements prior to June 12, 2003 as a result of conversations with current and former colleagues. The School District's two witnesses were responsible for conducting informal pre-retirement interviews with faculty and staff. Both testified that they did not recall anyone ever inquiring about reimbursement of Medicare Part B premiums.

In her decision dated May 7, 2009, the ALJ first reviewed and evaluated the testimony of each of these witnesses. She then found that

> "[d]espite some weaknesses in the testimony of certain of the [Union's] witnesses, the record credibly evidences that both the [Union], through some of its officials, and [bargaining] unit employees employed as of June 12, 2003, among them witnesses who testified at the instant hearing and those identified individually and collectively in the record testimony, had been aware of the at-issue reimbursement for many years prior to the June 12, 2003 memorandum."[3]

The ALJ therefore confirmed her original ruling and order. On June 1, 2009, the School District again filed exceptions.

In its final decision and order dated April 22, 2010, PERB concluded that, based on

> "examination of the record, including the testimony of [the School District's witnesses], . . . the supplemental evidence presented by the [Union's] witnesses is sufficient to resolve the ambiguity we found in the wording of the parties' stipulation of facts. The evidence presented at the hearing demonstrates that both the [Union] and [bargaining] unit employees had sufficient knowledge of the District's practice at the time of the announced discontinuation of that practice to demonstrate a reasonable expectation that the practice would continue" (43 PERB ¶ 3017 [2010]).

Thus, PERB denied the District's exceptions, affirmed the ALJ and ordered the District to rescind the June 12, 2003 memorandum.

The School District commenced this CPLR article 78 proceeding by petition dated May 24, 2010, claiming that PERB's determination was based upon an error of law, arbitrary and capricious and not supported by substantial evidence. In a memorandum and judgment decided and entered on May 10, 2012, the Appellate Division, with two Justices dissenting, confirmed PERB's determination and dismissed the District's

---

**3.** The ALJ disregarded entirely the testimony of two of the Union's witnesses because she concluded they had nothing relevant to say about the narrow issue on remand.

petition (95 AD3d 1479 [3d Dept 2012]). The District appeals to us as of right,[4] and we now affirm.

"As the agency charged with implementing the fundamental policies of the Taylor Law, [PERB] is presumed to have developed an expertise and judgment that requires us to accept" its decisions with respect to matters within its competence (*see Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398, 404 [1979]). Our standard of review has been variously stated, but boils down to whether PERB's decision was legally permissible, rational and thus not arbitrary and capricious (*see id.* at 402, 405; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]). And where there has been a hearing, as happened here, PERB's determination must be supported by substantial evidence (*Pell*, 34 NY2d at 231).

■ In this case, the School District takes the position that PERB should have deferred to the arbitrator's finding there was no past practice, citing *Matter of New York City Tr. Auth. (Bordansky)* (4 PERB ¶ 3031 [1971]). In *Bordansky*, the Board subscribed to a policy of deferral to arbitral awards "under well defined standards," stating that

> "in order for [PERB] in an improper practice proceeding to defer to an arbitration award it must be satisfied that the issues raised by the improper practice charge were fully litigated in the arbitration proceeding, that arbitral proceedings were not tainted by unfairness or serious procedural irregularities[,] and that the determination of the arbitrator was not clearly repugnant to the purposes and policies of the [Taylor Law]."

Considering the facts of this case in light of the *Bordansky* factors, it was reasonable for PERB not to defer to the arbitrator: identity of issues was lacking and, to the extent the arbitrator purported to determine there was no past practice within the meaning of the Taylor Law, he exceeded his authority and his finding was repugnant to that statute.

---

4. At the Appellate Division, the majority and the dissent disagreed on a question of law; namely, whether the School District adequately preserved the issue of whether PERB should have deferred to the arbitrator's finding that a past practice did not exist. We conclude that the District preserved this issue for appellate review.

First, any of the arbitrator's findings relating to past practice within the meaning of the Taylor Law fell outside the scope of his authority. This conclusion is supported by the way in which the arbitrator himself portrayed his charge (*see e.g.* the arbitrator's statement that he "approache[d] the Parties' contractual interpretation dispute with the primary understanding that *his jurisdiction [was] limited to and derived from the Parties' Collective Bargaining Agreement* . . . Accordingly, . . . Taylor Law obligations cannot alter this Arbitrator's responsibility to render a decision *based on the language contained in the Parties' Agreement*" [emphases added]). And as a matter of contract interpretation, the arbitrator's pronouncement about past practice was dictum, as the ALJ and PERB correctly recognized. Past practice would only become relevant to the parties' contractual rights and responsibilities if the CBA committed the School District to maintain existing benefits, and the arbitrator found it did not.

PERB additionally decided that any determination by the arbitrator with respect to past practice under the Taylor Law was repugnant to that statute. For example, the arbitrator opined that the voluntary nature of the payments, especially since they effectively originated as a mandate, meant there was no mutual understanding and agreement sufficient to establish a binding past practice. A binding past practice under the Taylor Law, however, does not require mutual understanding and agreement (*see County of Nassau,* discussed *supra*).

Finally, in our view the arbitrator did not, in fact, rule there was no past practice within the meaning of the Taylor Law. Instead, he merely stated that historical practices were insufficient to establish a *contract* right to reimbursement of Medicare Part B premiums. This is why he mentioned mutual understanding and agreement, a contract concept. In short, the arbitrator did not purport to decide the same issue as was litigated in the improper practice proceeding (*see Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v New York State Pub. Empl. Relations Bd.,* 267 AD2d 935, 937 [1999] [PERB improperly relied upon its policy of deference as the sole basis for resolving an improper practice charge because the relevant inquiry in the prior disciplinary proceeding—whether there was cause for the employee's dismissal—was "very different than" the inquiry in an improper practice proceeding, which was whether the employer's action was motivated by anti-union bias, even if cause existed]).

Further, PERB's decision in regard to past practice was supported by substantial evidence (*see Pell*, 34 NY2d at 231). The School District's knowledge of the payments is shown by the managerial oversight necessary to make them, as well as the June 12, 2003 memorandum itself. The Union's and bargaining unit employees' knowledge was established by the testimony given at the hearing. The District protests that the testimony of the Union's witnesses was incredible and consisted entirely of inadmissible hearsay; however, credibility determinations are the province of the ALJ, in the first instance, and PERB, not us. And the testimony was not hearsay because, as the Board observed in its final decision and order, "it relates to [the witnesses'] awareness of the practice, rather than the truth of the matter asserted" (43 PERB ¶ 3017). Moreover, the ALJ was not bound by the rules of evidence, and hearsay evidence may properly inform PERB's decisions.

■ The School District also contends that continued Medicare Part B premium reimbursement absent a contractual requirement constitutes a gift of public funds and is therefore unconstitutional (*see* NY Const, art VIII, § 1). School districts may not "give or loan any money or property" (*id.*) unless "expressly authorized by statute, local law, resolution or pursuant to a contract term" (*see Matter of Karp v North Country Community Coll.*, 258 AD2d 775, 775 [3d Dept 1999]). The statutory permission here comes from the definition of "terms and conditions of employment" (Civil Service Law § 201 [4]) and the bargaining right in certain binding past practices. The District simply presumes the conclusion for which it argues, as the reimbursement of Medicare Part B premiums can only be an unconstitutional gift of public funds if the Union has no right under the Taylor Law to such reimbursement.

We have examined the School District's remaining arguments and likewise consider them to be without merit. Accordingly, the judgment of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM taking no part.

Judgment affirmed, with costs.