In the Matter of BUFFALO TEACHERS FEDERATION, INC., Petitioner, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents. [62 NYS3d 644]—

Proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Fourth Judicial Department by an order of the Supreme Court, Erie County [Tracey A. Bannister, J.], entered February 14, 2017) to review a determination of respondent New York State Public Employment Relations Board. The determination, among other things, partially reversed the determination of the Administrative Law Judge.

It is hereby ordered that the determination is unanimously confirmed without costs and the petition is dismissed.

Memorandum: Petitioner commenced this CPLR article 78 proceeding to annul a determination of respondent New York State Public Employment Relations Board (PERB), which, inter alia, reversed a determination of an administrative law judge (ALJ) insofar as he ordered the reinstatement of 88 teachers with back pay. We confirm the determination and dismiss the petition.

In May 2005, respondent Buffalo City School District (District) passed a resolution naming a single health insurance carrier for the teachers in its employ. The resolution effectuated a change to the existing collective bargaining agreement (CBA) between the District and petitioner, the teachers' bargaining representative. In a subsequent letter to the teachers, the District explained that it was forced either to make that change to the CBA or to make "massive cuts" in other areas. Petitioner filed a grievance the same month seeking to prevent that change to the CBA. In July 2005, the District sent a letter to 88 teachers informing them that they were to be laid off because the failure to reach an agreement on a single health insurance carrier had forced the District to make budgetary cuts elsewhere. The District's superintendent met with the affected teachers in August 2005 and, according to the testimony of one of the teachers, the superintendent announced that they would have their jobs back if they pressured petitioner to withdraw the grievance. When petitioner refused to withdraw the grievance, the District discharged the 88 teachers and

implemented the proposed change to the CBA. Thereafter, petitioner filed an improper practice charge alleging violations of the Taylor Law (Civil Service Law art 14). In particular, petitioner alleged violations of Civil Service Law § 209-a (1) (a) and (d). This proceeding arises from that improper practice charge.

While that charge was pending, the grievance proceeded to arbitration. In an October 2006 award, the arbitrator concluded, inter alia, that the District had discharged the teachers "wrongfully, in furtherance of its ill-conceived effort to force the Union into submissive acceptance of the unilateral modification" to the CBA. The award directed the District to reinstate the teachers with back pay. Supreme Court confirmed the arbitration award. On appeal, however, we concluded that "the arbitrator acted in excess of the power granted to him with respect to that part of the award concerning the teachers" (*Matter of Buffalo Teachers Fedn., Inc. v Board of Educ. of City School Dist. of City of Buffalo*, 50 AD3d 1503, 1506 [2008], *lv denied* 11 NY3d 708 [2008]). We therefore vacated that part of the award with respect to the reinstatement of the teachers (*id.* at 1504).

Thereafter, the improper practice charge proceeded on a stipulated record before an ALJ. The ALJ concluded, inter alia, that the discharge of the 88 teachers was "the final step in the preconceived scheme designed to pressure [petitioner] to drop the single carrier grievance" and thus violated the statute. Like the arbitrator had done, the ALJ ordered the District to reinstate the teachers with back pay. The District filed exceptions with PERB, which reversed that part of the ALJ's determination with respect to the reinstatement of the teachers. In doing so, PERB highlighted the long-recognized distinction "between a threat of retaliation because either a union or covered employee[ ] exercises protected rights and a statement that there might be layoffs if the exercise of protected rights results in cost increases for the employer" (*Matter of City of Albany [Albany Police Officers Union, Local 2841]*, 17 PERB ¶ 3068 [1984]). Applying that precedent, PERB concluded that the July 2005 letters from the District announced the layoffs as a decision that had already been made and explained the underlying reason for the layoffs, i.e., the need to cut costs, and thus the discharge of the teachers did not violate the statute. Petitioner then commenced this proceeding seeking to annul PERB's determination.

Our review is limited to whether PERB's determination was affected by an error of law, arbitrary and capricious or an abuse

of discretion, or unsupported by substantial evidence (*see Matter of Town of Islip v New York State Pub. Empl. Relations Bd.*, 23 NY3d 482, 492 [2014]; *Matter of Chenango Forks Cent. Sch. Dist. v New York State Pub. Empl. Relations Bd.*, 21 NY3d 255, 265 [2013]). " 'As the agency charged with implementing the fundamental policies of the Taylor Law, [PERB] is presumed to have developed an expertise and judgment that requires us to accept' its decisions with respect to matters within its competence" (*Chenango Forks Cent. Sch. Dist.*, 21 NY3d at 265, quoting *Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398, 404 [1979]).

Petitioner contends that the determination was arbitrary and capricious inasmuch as PERB departed from its own precedent in refusing to defer to the arbitration award. We reject that contention. Although an administrative body acts arbitrarily and capriciously in departing from its own precedent and failing to explain the reasons for the departure (*see Matter of Charles A. Field Delivery Serv. [Roberts]*, 66 NY2d 516, 519-520 [1985]), we conclude that PERB's determination here was consistent with its own precedent. Notably, PERB will defer to an arbitration award only in limited circumstances (*see generally Matter of New York City Tr. Auth. [Bordansky]*, 4 PERB ¶ 3031 [1971]), and it usually does not do so where the charging party alleges a violation of Civil Service Law § 209-a (1) (a) (*see Matter of Police Benevolent Assn. of the New York State Troopers, Inc. [State of New York (Division of State Police)]*, 36 PERB ¶ 3048 n 3 [2003]; *Matter of Schuyler-Chemung-Tioga Educ. Assn. [Schuyler-Chemung-Tioga Bd. of Coop. Educ. Servs.]*, 34 PERB ¶ 3019 [2001]; *Matter of Addison Cent. Sch. Dist. [Addison Teachers' Assn., NEA/NY]*, 17 PERB ¶ 3076 [1984]). Inasmuch as petitioner alleged violations of section 209-a (1) (a) and (d), it was the precedent of PERB to refuse to defer to the arbitration award in this case. Moreover, to the extent that the arbitrator made findings with respect to the layoffs, it was reasonable for PERB not to defer to the arbitration award because the arbitrator exceeded the scope of his authority and his findings were inconsistent with PERB's interpretation of the statute (*see Chenango Forks Cent. Sch. Dist.*, 21 NY3d at 265).

Contrary to petitioner's further contention, the determination is supported by substantial evidence. " 'An administrative agency's determination need not be the only rational conclusion to be drawn from the record[, and] the existence of other, alternative rational conclusions does not warrant annulment of the agency's conclusion' " (*Matter of Klimov v New York State*

*Div. of Human Rights*, 150 AD3d 1677, 1677 [2017], quoting *Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227, 239 [1997]). Insofar as relevant here, it is unlawful for a public employer "to interfere with, restrain or coerce public employees in the exercise of [certain] rights," such as their right to participate in organizing activity, "for the purpose of depriving them of such rights" (Civil Service Law §§ 209-a [1] [a]; *see* 202). In the July 2005 letters, the District explained that layoffs were a cost-cutting measure made necessary by the failure to reach an agreement on health insurance. Based upon our review of the record, we conclude that it was rational for PERB to determine that the layoffs were not motivated by an improper purpose. Present—Carni, J.P., Lindley, NeMoyer, Curran and Troutman, JJ.