Appeal from a judgment (denominated order and judgment) of the Supreme Court, Genesee County (Emilio L. Colaiacovo, J.), entered November 9, 2016 in these consolidated, hybrid declaratory judgment actions/CPLR article 78 proceedings. The judgment, inter alia, dismissed the amended complaint/petition in action No. 1 and the complaint/petition in action No. 3.
 

 It is hereby ordered that the judgment so appealed from is unanimously affirmed without costs.
 

 Memorandum: In these consolidated, hybrid declaratory judgment actions/CPLR article 78 proceedings, plaintiffs-petitioners David Cleere, Marny Cleere, W. Scott Collins, and Betsy Collins (petitioners) appeal from a judgment that, inter alia, dismissed their amended complaint/petition in action No. 1 and complaint/petition in action No. 3 seeking to annul the determination of defendant-respondent Town of LeRoy Zoning Board of Appeals (ZBA) that, inter alia, the use of property at issue was a preexisting nonconforming use. We affirm.
 

 Defendant-respondent Frost Ridge Campground, LLC, individually and doing business as The Ridge NY Recreation & Camping (Frost Ridge), owns a parcel of land (Property) that has functioned as a campsite and provider of recreational activities since the 1950s. In 2010, Frost Ridge began selling tickets for admission to concerts hosted on the Property as part of its summer concert series. In 2013, Frost Ridge applied for a special use permit to continue the performance of those concerts on the Property, but the ZBA determined that no special use permit was necessary. Thereafter, petitioners commenced a declaratory judgment action in action No. 1 seeking, inter alia, to annul that determination. In April 2015, Supreme Court converted action No. 1 into a CPLR article 78 proceeding, annulled the ZBA’s determination for lack of public notice, and remitted the matter to the ZBA for a public hearing. Upon remittal to the ZBA, Frost Ridge did not apply for a special use permit, but instead sought an interpretation of certain provisions of the Code of the Town of LeRoy (Code) of defendant-respondent Town of LeRoy (Town) pertaining to the Property. In particular, Frost Ridge asked, inter alia, whether camping and attendant recreational activities, including live and recorded amplified music and limited food service, constituted a preexisting nonconforming use under section 165-13 of the Code. After a hearing, the ZBA issued a determination in which it answered that question in the affirmative. Thereafter, petitioners commenced the hybrid action/proceeding in action No. 3, seeking to annul that determination as arbitrary and capricious, made in violation of the law, and not based on substantial evidence. Petitioners also amended the complaint/petition in action No. 1, and sought a declaratory judgment, injunctive relief and monetary damages in both, actions/proceedings.
 

 As a preliminary matter, the contentions that petitioners raise on appeal relate only to those causes of action in the nature of a CPLR article 78 proceeding, and they have thereby abandoned on appeal any contentions related to their causes of action seeking relief in the nature of a declaratory judgment, injunctive relief, or monetary damages (see generally Ciesinski v Town of Aurora, 202 AD2d 984, 984 [4th Dept 1994]). Furthermore, the Town, which is the sole plaintiff in action No. 2 in addition to being a defendant-respondent in action Nos. 1 and 3, did not file a notice of appeal and thus the contentions raised as an appellant in its respondent’s brief are not properly before us (see Taub v Schon, 148 AD3d 1202, 1203 [2d Dept 2017]).
 

 Petitioners contend that the ZBA’s determination was arbitrary and capricious because the ZBA refused to follow its own precedent and did not explain its reasons for failing to do so. We reject that contention. In 1998, the ZBA interpreted the Code to provide that a preexisting nonconforming use of land as a campsite runs with the land pursuant to section 165-13, notwithstanding section 165-39 (B), which requires that an existing campsite of record be brought into compliance with the Code upon being sold. Contrary to petitioners’ contention, the ZBA’s determination is consistent with that precedent (see Matter of Buffalo Teachers Fedn., Inc. v New York State Pub. Empl. Relations Bd., 153 AD3d 1643, 1645 [4th Dept 2017]).
 

 Petitioners also contend that the ZBA’s determination was arbitrary and capricious, lacked a rational basis, and was not based on substantial evidence inasmuch as the use of the Property to host commercial concerts was not a preexisting nonconforming use. We reject that contention. It is well settled that a determination by a ZBA “must be sustained if it has a rational basis and is supported by substantial evidence” (Matter of Toys “R” Us v Silva, 89 NY2d 411, 419 [1996]; see Matter of Bounds v Village of Clifton Springs Zoning Bd. of Appeals, 137 AD3d 1759, 1760 [4th Dept 2016]). “A record contains substantial evidence to support an administrative determination when reasonable minds could adequately accept the conclusion or ultimate fact based on the relevant proof” (Bounds, 137 AD3d at 1760 [internal quotation marks omitted]). Where there is conflicting evidence, it is the role of the administrative agency to weigh the evidence and make a choice, and the courts will not reject a choice based on substantial evidence (see id.).
 

 “A use of property that existed before the enactment of a zoning restriction that prohibits the use is a legal nonconforming use” (Matter of Tavano v Zoning Bd. of Appeals of the Town of Patterson, 149 AD3d 755, 756 [2d Dept 2017] [internal quotation marks omitted]; see Toys “R” Us, 89 NY2d at 417). “The nature and extent of a preexisting nonconforming use generally will determine the amount of protection accorded that use under a zoning ordinance” (Matter of Rudolf Steiner Fellowship Found. v De Luccia, 90 NY2d 453, 458 [1997]). “All zoning cases are by their nature fact specific, and as a leading authority recognizes, the right to a nonconforming use must necessarily be decided ‘on a case-by-case basis’ ” (Toys “R” Us, 89 NY2d at 422). Here, there was substantial evidence that the Property was used for recreational activities and as a campsite prior to the adoption of the zoning ordinance. That evidence included the affidavit of a former employee of Frost Ridge’s predecessor, who averred that the Property had been used for skiing and other recreational purposes since the 1950s. He averred that he began working there in the 1960s and observed numerous recreational activities on the Property, including winter sports, live music, and campsite rentals.
 

 Furthermore, we conclude that the ZBA rationally interpreted the term “campsite” as used in the Code as encompassing recreational activities including live music in determining that the use of the Property was a preexisting nonconforming use. Where, as here, a zoning ordinance permits the ZBA to interpret its requirements (see Code § 165-46 [B] [2]), “specific application of a term of the ordinance to a particular property is . . . governed by the [ZBA’s] interpretation, unless unreasonable or irrational” (Matter of Frishman v Schmidt, 61 NY2d 823, 825 [1984]; see Bounds, 137 AD3d at 1760). The Code contains no definition of “campsite” or any enumeration of what activities are permitted there. The ordinance does, however, require that any large campsite “provide a common open area suitable for recreation and play purposes” (§ 165-39 [C] [8]), and thus expressly contemplates that a campsite is a place for recreation. Although the kind of recreation is open to interpretation, it is rational in our view to conclude that live music, along with swimming and other outdoor activities, is the kind of recreation to be enjoyed at a campsite. Moreover, the interpretation of the term “campsite” as including attendant recreational activities such as live music is consistent with the record evidence. Several neighbors stated at the hearing that there was a history of live music on the Property, and at least one of them recalled that live, amplified bands played every summer weekend during the 1970s and 1980s.
 

 Petitioners further contend that the ZBA’s determination was arbitrary and capricious, lacked a rational basis, and was not based on substantial evidence inasmuch as the use of the Property to host live music was either abandoned or illegally expanded. We reject that contention as well. With respect to abandonment, the Code provides that a preexisting nonconforming use is deemed abandoned if discontinued for a period of one or more years (see Code § 165-13 [C] [5]). Here, it is undisputed that the Property functioned continuously as a recreational facility and campsite since the 1950s. To the extent that petitioners contend that use of the Property to host live music was abandoned in 2008 and 2009, we note that there is evidence in the record that live concerts were hosted on the Property during those years. With respect to expansion, we conclude that there is substantial evidence for the ZBA’s determination that Frost Ridge’s “actions were consistent with the essential character of the property as a prior non-conforming use.” Not only is there evidence of live concerts every summer weekend during the 1970s and 1980s, but Frost Ridge submitted an expert opinion that the noise from the concerts was quieter than other ambient noise in the neighborhood, including noise from a creek and a shooting range.
 

 Finally, the contentions raised for the first time in petitioners’ reply brief are not properly before us (see Becker-Manning, Inc. v Common Council of City of Utica, 114 AD3d 1143, 1144 [4th Dept 2014]).
 

 Present—Whalen, P.J., Centra, Lindley, Troutman and Winslow, JJ.