Matter of State of New York v New York State Pub. Empl. Relations Bd. (2020 NY Slip Op 02963)





Matter of State of New York v New York State Pub. Empl. Relations Bd.


2020 NY Slip Op 02963


Decided on May 21, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 21, 2020

529832

[*1]In the Matter of State of New York, Petitioner,
v
New York State Public Employment Relations Board et al., Respondents.

Calendar Date: March 27, 2020

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ.


Michael N. Volforte, Governor's Office of Employee Relations (Clay J. Lodovice of counsel), for petitioner.
David B. Quinn, Public Employment Relations Board, Albany (Ellen M. Mitchell of counsel), for New York State Public Employment Relations Board and another, respondents.
Gleason, Dunn, Walsh & O'Shea, Albany (Ronald G. Dunn of counsel), for Police Benevolent Association of New York State, Inc., respondent.



Garry, P.J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Employment Relations Board finding that petitioner committed an improper employer practice.
Respondent Police Benevolent Association of New York State, Inc. (hereinafter PBA) is the exclusive bargaining representative for the Agency Police Services bargaining unit (hereinafter APSU), which includes, as pertinent here, petitioner's employees with police titles working for the New York State Office of Parks, Recreation and Historic Preservation. Various police titles are encompassed in APSU, such as park officers and sergeants. The PBA and petitioner entered into a collective bargaining agreement (hereinafter CBA) covering APSU members from April 2005 through March 2015.[FN1] The CBA provided for a winter schedule and a summer schedule, which typically resulted in members working four 10-hour days with three days off in winter and five eight-hour days with two days off in summer. The CBA also contains various articles, which, as pertinent here, concern seniority and vacancies, changes to members' shifts, and grievance procedures.
In July 2012, petitioners and the PBA met to discuss the winter schedule for the 2012-2013 season. Petitioner proposed a new schedule, which would require Suffolk County park police sergeants to work 6:00 a.m. to 4:00 p.m. on the first two days of the week, and then 4:00 p.m. to 2:00 a.m. on the next two days. The PBA proposed an alternate schedule. Petitioner ultimately implemented the schedule it had originally proposed. In response, the PBA filed an improper practice charge with respondent Public Employment Relations Board (hereinafter PERB), alleging that petitioner violated Civil Service Law § 209-a (1) (a) and (d) by unilaterally implementing the winter schedule. The PBA claimed the schedule imposed a new term and condition on APSU members' employment and constituted a failure to negotiate in good faith over a mandatory subject of bargaining. Petitioner answered, arguing that the PBA had waived its right to bargain by agreeing to language in the CBA that expressly allowed petitioner to unilaterally set the schedule, and that petitioner had satisfied its duty to negotiate the schedule. Petitioner also argued that PERB lacked jurisdiction to hear this issue due to the CBA's grievance procedure.
An evidentiary hearing was held in June 2013 before an Administrative Law Judge (hereinafter ALJ), who found that petitioner had violated Civil Service Law § 209-a (1) (d), as there was a duty to negotiate the winter schedule, and ordered restoration of the prior schedule.[FN2] The ALJ further found that the parties had engaged in the past practice of reaching an agreement on the schedule prior to its implementation, and that the record did not support the claim that the PBA had waived its right to negotiate the settling of the schedule or that petitioner had satisfied its duty to negotiate the schedule. Petitioner filed exceptions to the ALJ's findings. Upon review, PERB affirmed the ALJ's decision. Petitioner thereafter commenced this CPLR article 78 proceeding in Supreme Court, and the matter was transferred to this Court.
Petitioner first contends that PERB lacks jurisdiction over this dispute, as its subject — the settling of the schedules — is covered by the CBA, thus providing the PBA with a right enforceable through the CBA's grievance procedure. PERB and this Court have interpreted the Civil Service Law to deprive PERB of jurisdiction when the dispute between an employer and an employee organization is "essentially contractual" and when the agreement "provides the charging party with a reasonably arguable source of right with respect to the subject matter of the charge" (Matter of City of New Rochelle v New York State Pub. Empl. Relations Bd., 101 AD3d 1438, 1440 [2012] [internal quotation marks, emphasis and citations omitted], lv denied 21 NY3d 857 [2013]; see Matter of Roma v Ruffo, 92 NY2d 489, 497 [1998]; Matter of State of New York v New York State Pub. Empl. Relations Bd., 176 AD3d 1460, 1462 [2019]; see also Civil Service Law § 205 [5] [d]). "[A]n employer's breach of a CBA provision is remediable through contractual grievance procedures . . ., while a charge that an employer has violated the statutory duty to bargain in good faith over a matter outside the terms of a CBA is a matter within PERB's jurisdiction" (Matter of County of Erie v State of New York, 14 AD3d 14, 16 [2004]; see Matter of Roma v Ruffo, 92 NY2d at 494-495).
Here, petitioner asserts that articles 15 and 24 of the CBA preclude PERB from hearing the dispute. Article 15 is entitled "Shift Changes," and section 15.3 states, as pertinent here, that "[n]o employee shall have his [or her] shift schedule changed for the purposes of avoiding the payment of overtime." Similarly, article 24 is entitled "Seniority," and section 24.3 provides that "[t]he agency shall have the right to make any job and shift assignment necessary to maintain the services of the agency involved." We do not agree with petitioner's assertion that these articles provide the PBA with a reasonably arguable source of right or a contractual remedy to challenge petitioner's unilateral decision to set the schedule (see Matter of County of Saratoga v New York State Pub. Empl. Relations Bd., 21 AD3d 1160, 1163 [2005]). Section 15.3 clearly prohibits shift schedule changes as a mechanism to avoid the payment of overtime, while section 24.3, read in context, provides for the changing of schedules in the event of a vacancy. None of the provisions grants petitioner the ability to unilaterally change shift schedules when the seasons change. As the dispute centered on matters outside of the CBA, we find that "PERB's jurisdictional limitation was not triggered" (Matter of State of New York v New York State Pub. Empl. Relations Bd., 176 AD3d at 1462 [internal quotation marks and citations omitted]).
Petitioner next contends that certain determinations made by PERB are not supported by substantial evidence, as required (see Matter of Town of Islip v New York State Pub. Empl. Relations Bd., 23 NY3d 482, 492 [2014]; Matter of Spence v New York State Dept. of Transp., 167 AD3d 1188, 1190 [2018]). Like the ALJ, PERB found that petitioner did not satisfy its duty to negotiate the schedule with the PBA, thus prohibiting petitioner from unilaterally implementing the schedule. As its primary evidence that it had satisfied its duty to negotiate, petitioner offered articles 15 and 24 of the CBA. However, as discussed above, these articles do not demonstrate that the PBA and petitioner "negotiated terms in [the CBA] that are reasonably clear on the specific subject at issue" (Matter of Kent v Lefkowitz, 27 NY3d 499, 505 [2016] [internal quotation marks and citation omitted]); rather, these provisions merely address schedule changes in specific circumstances. Reading these articles "as a whole," they do not indicate that the parties "reached an accord" on the subject of the setting of the schedules for each season, thus allowing petitioner to unilaterally implement the schedule (id. at 506-507 [internal quotation marks omitted]). As such, substantial evidence supports PERB's determination that petitioner did not satisfy its duty.
As to PERB's determination that the PBA did not waive its rights to negotiate the setting of the schedule, the CBA, including sections 15.3 and 24.3, does not include a waiver that is "clear, unmistakable and without ambiguity," which would reveal an intent by the PBA to relinquish its right to negotiate the schedules (Matter of Chenango Forks Cent. School Dist. v New York State Pub. Empl. Relations Bd., 95 AD3d 1479, 1484 [2012] [internal quotation marks and citations omitted], affd 21 NY3d 255 [2013]; see City of New York v State of New York, 40 NY2d 659, 669 [1976]; Matter of Civil Service Empls. Assn. v Newman, 88 AD2d 685, 686 [1982], lv denied 57 NY2d 775 [1982]). Accordingly, substantial evidence supports PERB's determination (see Matter of Chenango Forks Cent. School Dist. v New York State Pub. Empl. Relations Bd., 95 AD3d at 1484-1485).
Petitioner further challenges PERB's determination that there was an established past practice, whereby the parties would reach an agreement on the schedule prior to its implementation; petitioner asserts that this finding was not supported by substantial evidence. "[A] binding past practice is established where the practice was unequivocal and was continued uninterrupted for a period of time sufficient under the circumstances to create a reasonable expectation among the affected bargaining unit employees that the practice would continue" (Matter of Albany Police Officers Union, Local 2841, Law Enforcement Officers Union Dist. Council 82, AFSCME, AFL-CIO v New York Pub. Empl. Relations Bd., 170 AD3d 1312, 1313 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 911 [2019]; see Matter of Chenango Forks Cent. Sch. Dist. v New York State Pub. Empl. Relations Bd, 21 NY3d 255, 263 [2013]). At the hearing before the ALJ, the PBA and petitioner each had an opportunity to present witnesses and evidence. The PBA's president and park police sergeant (hereinafter the union president) testified on behalf of the PBA. He stated that throughout the years, which party — petitioner or the PBA — proposed a schedule would vary, but that the parties "always tried to negotiate [the schedules] to a resolve." The union president testified that the 2012-2013 winter schedule proposed by petitioner posed quality of life issues for affected members. The PBA proposed an alternate schedule, but petitioner ultimately implemented the schedule it originally proposed without reaching any agreement with the PBA to do so.
The chief of park police since 2008 testified on behalf of petitioner. He stated that, in preparation for creating the schedules, he directed subordinate commanders of each region to develop and submit schedules to headquarters "for approval" and "confer" with their local unions for input. The chief of police denied negotiating the schedule with the PBA prior to implementation, but rather claimed that petitioner would provide the PBA with the schedule and the PBA "would have an opportunity" to provide input. As to the 2012-2013 winter schedule, he testified that he implemented the proposed split shift schedule as it was "necessary for the operation" of the region, and that this implementation was consistent with previous years. He testified that he had the "final say" on the schedule.
Petitioner also called a lieutenant with park police in Long Island since 2008, who testified that he was involved with scheduling officers and sergeants on Long Island, which includes Suffolk County, for a number of years. The lieutenant indicated that, throughout the years, once the schedule was developed by the commanding officer for the region, it would be presented to the PBA and any suggestions or proposals made by the PBA would then be given to the commanding officers and the chief of police. The proposals would be reviewed, and the PBA would be informed of the final schedule to be implemented. If the PBA's proposals were accepted, the lieutenant would incorporate those changes into the shift schedules. As to the 2012-2013 winter schedule, the lieutenant indicated that he reviewed a proposed sergeant schedule submitted by the union president and that a commanding officer ultimately rejected the proposed schedule, although the lieutenant could not recall why.
Here, the ALJ concluded that the parties had engaged in the past practice of negotiating and reaching an agreement prior to the implementation of the schedule, and PERB similarly credited the testimony of the witnesses for both petitioner and the PBA, finding that their testimony "did not materially differ as to what had in fact happened in their meetings." Upon our review of the record, we are satisfied that substantial evidence supports PERB's determination, and, as such, we decline to disturb it (see Matter of Town of Islip v New York State Pub. Empl. Relations Bd., 23 NY3d at 493-494; Matter of State of New York v New York State Pub. Empl. Relations Bd., 176 AD3d at 1464; Matter of Manhasset Union Free School Dist. v New York State Pub. Empl. Relations Bd., 61 AD3d 1231, 1234 [2009]).
As a final matter, PERB, through a counterclaim, seeks enforcement of its remedial order. The order, as pertinent here, requires petitioner to "[c]ease and desist from unilaterally implementing" the work schedules and requires that affected employees be made "whole for wages and/or lost benefits, if any." Remedial orders by PERB "are peculiarly matters within administrative competence" and "should be upheld if [they] can be reasonably applied" (Matter of Hudson Val. Community Coll. v New York State Pub. Empl. Relations Bd., 132 AD3d 1132, 1135 [2015] [internal quotation marks and citations omitted]; see Matter of City of New York v New York State Pub. Empl. Relations Bd., 103 AD3d 145, 149 [2012], lv denied 21 NY3d 855 [2013]). PERB's determination sought to stop an improper employer practice, a function that is within its purview (see Civil Service Law § 205 [5] [d]). As the remedies ordered by PERB can be reasonably applied by petitioner and are not unduly burdensome, "PERB is entitled to a judgment of enforcement of its remedial order" (Matter of Monroe County v New York State Pub. Empl. Relations Bd., 85 AD3d 1439, 1442 [2011]; see Matter of State of New York v New York State Pub. Empl. Relations Bd., 176 AD3d at 1465; see also Civil Service Law § 213 [d]).
Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, petition dismissed, and respondent Public Employment Relations Board is entitled to a judgment of enforcement of its remedial order.



Footnotes

Footnote 1: The 2005-2015 CBA was not reduced to writing at the time the improper practice charge was filed. However, both parties stipulated that the 1993-2003 CBA, negotiated by APSU's predecessor, represents the current agreement between the parties for purposes of this matter.

Footnote 2: The ALJ dismissed the charge alleging a violation of Civil Service Law § 209-a (1) (a), finding no record evidence to support this charge.